[No. 23088.   En Banc.   November 10, 1931.]

THE STATE OF WASHINGTON, *Respondent*, v. FRANK B. MARTIN, *Appellant*.[1]

*Chas. A. Turner*, for appellant.

*Charles R. Denney* and *Phil G. Warnock*, for respondent.

TOLMAN, C. J.—The appellant was accused, by an information in three counts: (1) of driving an automobile while under the influence of intoxicating liquor; (2) of reckless driving; and (3) of possession of intoxicating liquor. Upon the trial, the court dismissed the second count, and the jury found the appellant not guilty on the third count, but guilty on the first. From a judgment and sentence on the verdict on the first count, the appellant appealed.

[1]Reported in 4 P. (2d) 880.

Of the three contentions made by the appellant in this court, only one requires discussion, and that is that the trial court erred in refusing to permit the appellant to introduce the testimony of two persons who had been subpoenaed on behalf of the appellant at the direction of the court and were present at the trial ready to testify, but whose names were not on any list of witnesses served by the appellant upon the prosecuting attorney as required by Rem. Comp. Stat., § 2050, as amended by Laws of 1925, Ex. Ses., ch. 150, p. 420, § 2. The section, as amended, reads as follows, the new matter being italicized:

"All informations shall be filed in the court having jurisdiction of the offense specified therein by the prosecuting attorney of the proper county as informant; he shall subscribe his name thereto, *and at the time the case is set for trial the prosecuting attorney shall file with the clerk a list of the witnesses which he intends to use at the trial and serve a copy of the same upon the defendant, and within five days thereafter the defendant shall file with the clerk and serve upon the prosecuting attorney a list of the witnesses which the defendant intends to use at the trial. Either party may add such additional names at any time before trial as the court may by order permit,* and the said court shall possess and may exercise the same powers and jurisdiction to hear, try, and determine all such prosecutions upon information, to issue writs and process, and do all other acts therein, as it possesses and may exercise in cases of like prosecution upon indictments."

The names of the state's witnesses were all endorsed on the information, which was filed with the clerk on April 18, 1930, and a copy of which was shortly thereafter delivered to the appellant. This was a sufficient compliance with the statute on the part of the state. *State v. Rose,* 145 Wash. 634, 261 Pac. 391.

On May 5, 1930, the case was set to be tried on the

26th of that month, on which date it was re-set for trial on June 13, 1930, but because of the crowded condition of the calendar the trial did not actually occur until the 16th. On May 9, and again on June 11, the appellant, upon affidavits of his counsel, procured orders for subpoenas to witnesses, both times including the names and addresses of the two persons above mentioned whose testimony the court declined to receive. None of these papers was served upon the prosecuting attorney, nor was any other paper containing the names of those or any other witnesses ever served upon him by the appellant.

At the trial, the appellant testified on his own behalf, and then presented as witnesses the two persons above mentioned, one R. A. Kelly and a Mrs. Bagon. Upon objection by the state, on the sole ground that no list of the appellant's witnesses had ever been served upon the prosecuting attorney, the court refused to allow them to testify. The offer of proof was to the effect that Mrs. Bagon would testify that, when the appellant and two young women accompanying him had left Seattle earlier in the evening of the accident that occasioned his arrest, they were entirely sober, and that there was no evidence of intoxicating liquor about them; and that Kelly would testify that the appellant and his two companions had visited his home in Everett for an hour or so a short time before the accident, that no intoxicating liquor had been consumed or seen there, that the visitors had left his home entirely sober, and that he observed about them no evidence of intoxication.

The two young women, a Miss Gaus and a Miss Ward, had been called and had testified as witnesses for the state. The court, in rejecting Kelly and Mrs. Bagon as witnesses, offered to permit the appellant to call Miss Gaus and Miss Ward as his witnesses, be-

cause the state had called them. The appellant did this, and they testified as favorably for him (as nearly as we can tell from the record) as the offer of proof indicated that Kelly and Mrs. Bagon would have testified. Their testimony and his own constituted all of the appellant's evidence.

The prosecuting attorney, in opposing the introduction of the testimony of Kelly and Mrs. Bagon, did not claim that, if either or both were allowed to testify, the state would be put to any disadvantage by reason of surprise or otherwise.

Whether the appellant's omission to serve a list of witnesses was due to inadvertence or oversight on the part of his attorney or to intentional disregard of the requirement of the statute, does not appear.

The appellant contends on this appeal that that part of the statute quoted above which requires a defendant in a criminal action to serve upon the prosecuting attorney a list of the witnesses whom the defendant intends to use at the trial, is unconstitutional, or, if not, then that the statute is directory merely, and that the trial court abused its discretion in excluding the testimony of Kelly and Mrs. Bagon. The state assumes that the part of the statute mentioned is constitutional, concedes that it is directory only, and insists that there was no abuse of discretion.

There have been other cases before this court involving the statute now attacked. In *State v. Sickles*, 144 Wash. 236, 257 Pac. 385, five witnesses for the defendant, not included in any list previously served, were not allowed to testify. The occasion to use one of the witnesses arose first during the trial, and there was a suggestion that the defense did not know of the other witnesses until the evening before the trial. The offers of proof indicated that the excluded testimony would have been competent and ma-

terial. The defendant's only evidence was his own testimony. The state did not claim surprise or any other disadvantage by reason of the failure of the defendant to serve a list of witnesses. The trial court granted a new trial on the sole ground that the provision of the statute in question, being mandatory, violated a right guaranteed an accused person by Art. I, § 22, of the state constitution, which reads as follows:

"In criminal prosecutions, the accused shall have the right to appear and defend in person, and by counsel, to demand the nature and cause of the accusation against him, to have a copy thereof, to testify in his own behalf, to meet the witnesses against him face to face, to have compulsory process to compel the attendance of witnesses in his own behalf, have a speedy public trial by an impartial jury of the county in which the offense is alleged to have been committed, and the right to appeal in all cases; and in no instance shall any accused person before final judgment be compelled to advance money or fees to secure the rights herein guaranteed."

The state appealed from the order granting a new trial, and this court affirmed it, holding that the statute (referring, of course, only to that part requiring a defendant to serve a list of witnesses) is not mandatory, but directory merely; and that the trial court abused its discretion in rejecting the proffered testimony at the trial. In the course of the discussion, we expressed the opinion that, to construe the statute as mandatory instead of directory, precluding the exercise of any discretion by the trial court, "would certainly render the statute unconstitutional;" meaning, of course, that to apply the statute indiscriminately, so as to exclude testimony on behalf of a defendant because, and only because, he had not served a list of witnesses upon the prosecuting attorney, would be to deprive him of rights guaranteed by § 22 of article I

of the state constitution; that is, the right to appear and defend and the right to have compulsory process to compel the attendance of witnesses and the necessarily implied right to produce witnesses without compulsory process.

We recognized that, prior to 1925, the prosecutor in a criminal case was at some disadvantage in not knowing before the trial who the defendant's witnesses would be, and that the amendment then introduced into the statute was intended to put the parties more nearly upon an equality; and we said, though it was not necessary to a decision of the case, that we saw

". . . no reason why the accused in a criminal case, in the interest of orderly procedure and to protect the rights of the public, cannot be required to furnish a list of witnesses within a reasonable time after having received a list of witnesses from the prosecution, without violating the constitutional right to compulsory process."

In *State v. Adams,* 144 Wash. 699, 257 Pac. 387, the situation was identical with that in *State v. Sickles,* except that no offer of proof was made, nor was any excuse shown for the failure to serve a list of witnesses; and we held that the granting of a new trial was proper, because at the trial the court should have inquired into the reason for the failure to serve a list of witnesses, and then have exercised its discretion as to whether the witnesses should be allowed to testify notwithstanding such failure.

In *State v. Lunsford,* 163 Wash. 199, 300 Pac. 529, the testimony of only one witness out of several was excluded because the witness's name had not been included in any list previously served, and there was no offer of proof indicating what the witness's testimony would be. On an appeal after conviction, we held that it was not reversible error to refuse to receive the

testimony of the witness, because it did not appear that the testimony would have been admissible. This holding was not really necessary, for the case was reversed upon another ground, and the question of receiving this witness's testimony would not be likely to arise at another trial.

The present case is the first one to come to this court in which (1) the defendant failed to serve a list of his witnesses, though (2) he knew of the witnesses and had the intention to call them long enough before the trial to have enabled him to serve a list; (3) he offered no excuse for his failure to serve a list; (4) witnesses for the defendant present at the trial, in response to subpoenas issued at the direction of the court, were not permitted to testify because no list had been served; (5) the defendant, in his offer of proof, stated what it was expected the witness would testify to, and (6) such testimony would have been competent and material and not cumulative to such an extent as to be objectionable; and (7) the state did not suggest that it would be at any disadvantage by reason of surprise or lack of opportunity to interview the witnesses or investigate their reputation and character.

Applying to this situation the doctrine of *State v. Sickles* and the other cases above cited, we do not hesitate to decide that the trial court abused its discretion in not allowing the rejected witnesses to testify; for the only purpose the statute was designed to serve— *i. e.,* to guard the state against an unexpected defense or against inability to attack the testimony of unscrupulous witnesses—was not present in this case; and there was no reason whatever for penalizing the appellant for not complying with the statute, however inexcusable his neglect may have been, when his noncompliance put the state to no disadvantage.

The respondent argues that this holding would render the statute meaningless and useless in every conceivable case, but with this we can not agree. If, in such a case as this, the state should claim surprise, it might become the duty of the court, not to declare that the appellant's evidence should not be received, but that the state should have a reasonable opportunity to prepare itself against surprise; for the constitution, by guaranteeing an accused person the right to defend himself and to compel the attendance of witnesses by the court's own process, necessarily gives him the right to have attending witnesses heard.

A claim of surprise by the state might require only a brief interruption of the trial or an adjournment until the next day; but situations and circumstances are conceivable in which several days might be required and a reassignment of the case for trial at a future date might be necessitated; and we are bound to consider all reasonably possible situations in which the constitutional guaranties may be invoked. Upon the resumption of a trial or at another trial, still other witnesses might be produced whose names had not been given to the prosecutor, and upon suggestion of surprise the same process would have to be repeated; and so on, until the accused's constitutional right to a speedy trial would be violated.

But even so, no court is justified in permitting those practicing before it to unduly or unreasonably delay its proceedings or to otherwise trifle with it. The superior courts have ample disciplinary powers, and if it be borne in mind that the statute directs the filing and service of a list of witnesses, but nowhere says that the penalty for a failure to comply shall be the denial of the constitutional right to produce witnesses, it is at once apparent that, by the exercise of its disci-

plinary powers, the court can and should compel obedience or punish suitably for the failure to obey the statute.

By exercising such disciplinary powers, prompt and orderly procedure can be maintained, the statute enforced and the constitution respected, so that no case shall be submitted for decision without all of the available material facts being made known to the trier of the facts, to the end that substantial justice shall be done.

The judgment is reversed, with directions to grant a new trial.

PARKER and MAIN, JJ., concur.

MITCHELL, J. (concurring)—The portion of the statute involved is directory, and in my opinion there was an abuse of discretion in not allowing appellant's witnesses to testify; for which reason I concur in the reversal with directions to grant a new trial.

BEELER, J. (concurring)—I am unable to agree with the majority in the reasons for granting the appellant a new trial, although I am in accord with the result reached.

In my opinion, § 2, chap. 150, p. 420, Laws of 1925, Ex. Ses. (Rem. 1927 Sup., § 2050), set out in the majority opinion, is unconstitutional. That section of the statute requires the prosecuting attorney, at the time the case is set for trial, to file with the clerk of the court a list of the witnesses which he intends to use at the trial, and serve a copy thereof upon the defendant; and requires the defendant, within five days thereafter, to file with the clerk and serve upon the prosecuting attorney a list of the witnesses which he intends to use at the trial. This statute is plain and unambiguous. It is very obvious that the legislature intended to penalize a defendant in a criminal action

who fails to comply with this statute by preventing the witnesses called by him from testifying at the trial. I see no reason to suppose that the legislature did not mean what it said. To my mind, it is too plain for cavil that the penalty intended to be applied by the legislature is the rejection of the testimony of witnesses not listed as the statute requires.

Under § 22 of Article I of the state constitution, cited in the majority opinion, an accused person in a criminal action is guaranteed the right of compulsory process to compel the attendance of witnesses in his behalf. This constitutional provision imposes no restrictions or limitations upon this right. In order to hold the statute, § 2050, *supra,* constitutional, one would be forced to read into the constitution that a defendant in a criminal action shall be entitled to compulsory process, *provided he file with the clerk and serve upon the prosecuting attorney a list of the witnesses whom he intends to use at the trial.*

I do not wish to be understood as holding that a defendant in a criminal action may trifle with the orderly procedure of a trial of a criminal cause. However, I do wish to be understood as saying that a defendant in a criminal action under the constitution is guaranteed the right to compulsory process at any stage of the proceeding. In other words, the accused is entitled to compulsory process as a matter of right guaranteed to him by the constitution, which he may invoke at any time, even in the midst of a trial. This view finds support in § 29, Article I of the constitution, which reads:

"The provisions of this constitution are mandatory unless by express words they are declared to be otherwise."

The court, in holding the statute here under consideration to be constitutional, in the case of *State v.*

*Sickles,* 144 Wash. 236, 257 Pac. 385, was forced to hold that the statute is merely directory and not mandatory.

"To construe the statute as mandatory instead of directory, preventing the exercise of any discretion on the part of the trial court in such cases, would certainly render the statute unconstitutional." *State v. Sickles, supra.*

· I cannot agree that the statute is directory merely. Surely the legislature did not undertake to regulate that which the majority opinion holds to be purely procedural. If the legislature had intended the statute to be merely directory, they would have said so.

HOLCOMB, J. (concurring)—I concur in the result reached by the majority solely upon the ground that the trial judge was advised by the affidavits, applications and orders for subpoenas to witnesses, that the witnesses required by appellant, who were excluded from testifying by the trial judge, were probably material witnesses, both of whom had been allowed and ordered by the court, and the state did not claim surprise.

Under the spirit of our decisions in the cases of *State v. Sickles,* 144 Wash. 236, 257 Pac. 385, and *State v. Adams,* Id. 699, 257 Pac. 387, the reversal and granting a new trial herein is proper, because the trial court did not inquire into the reason for the failure to serve the list of witnesses by appellant and exercise its discretion as to whether the witnesses should be allowed to testify, notwithstanding such failure.

In the *Sickles* case, *supra,* in order to sustain the validity of the statute, in consonance with well known rules of construction that a statute will not be invalidated if it can be given a reasonable construction which will not violate a constitutional provision, it was necessary to declare the statute directory and not manda-

tory so as to secure the constitutional rights of the accused under Art. I, § 22, of the state constitution. The reason given, which is stated by the majority not to have been necessary to a decision of the case, was the reason for sustaining the validity of the statute. The constitution also prescribes our duty in Art. IV, § 2, that all decisions shall be given in writing, and the grounds of the decision shall be stated.

I am unable to concur in the statements of the majority regarding what can be done by a trial court in the exercise of disciplinary powers in the trial of a criminal case, especially a felony prosecution. It is at once apparent that, where the case is important and the defense very vigorous, the accused and his attorney might soon be at war with the trial court. Trial judges will often be sorely tried. What disciplinary powers the trial court should exercise in such cases is very vague and uncertain. This will inevitably induce more errors, more appeals, and more reversals. It would be much better, in my opinion, to leave what is said by the majority in reference thereto, unsaid.

BEALS, J. (concurring)—In a criminal prosecution, the attorney for the state is advised when the case is set for trial. Under the section of the statute here in question, the prosecuting attorney must at that time file and serve a list of his witnesses. If within five days the defendant neglects to serve a list of his witnesses, the prosecuting attorney may at once move the court for an order requiring that this be done, which order the court may enforce through its disciplinary powers.

With this slight additional statement, I concur in the opinion of the majority.

MILLARD, J. (dissenting)—In my opinion, the judgment should be affirmed.

While our constitution announces that its provisions are mandatory unless by express words they are declared to be otherwise, the legislature is not thereby divested, as we have many times held, of authority to enact statutes regulatory of the procedure for obtaining the rights guaranteed by our constitution.

By § 22, Article I, of the constitution, the defendant is guaranteed in a criminal prosecution the right, which he did not have at the early common law, to compulsory process to compel the attendance of witnesses in his own behalf. The defendant is also guaranteed the right of appeal.

It is not necessary to cite authority in support of the statement that the requirement of giving notice of appeal within a stated period is constitutional. Nor have we ever held unconstitutional the statute providing that the statement of facts shall be served within a prescribed time, otherwise it will not be considered. The failure to give notice of appeal within time results in dismissal of the appeal. If the rule or statute for serving and filing the statement of facts is breached, the penalty is the striking of the statement of facts. Without a statement of facts, an appeal in a criminal action would seldom be of value.

If the legislature has not by such enactment deprived the defendant of his constitutional right to appeal, how can it be logically held that by ch. 150, § 2, p. 420, Laws of 1925, Ex. Ses. [Rem. 1927 Sup., § 2050], a defendant is deprived of the right to compulsory process to compel the attendance of his witnesses? In each instance, the constitutional right is subject to a reasonable procedural regulation.

The writ of habeas corpus is a writ of right. That right is more ancient than, and surely as sacred as, the right of a defendant to compulsory process to compel the attendance of his witnesses. Theoretically, the

right to the writ is never to be denied in any case where the liberty of a person is made the subject of inquiry. Section 6, Article IV of our constitution, vests the superior courts with the power to issue writs of habeas corpus by or on behalf of any person in actual custody in their respective counties. In construing that section, which is as mandatory as any other section of the constitution, we held in the *Garrison* case (*State ex rel. Colvin v. Superior Court,* 159 Wash. 335, 293 Pac. 986) that the legislature could so regulate the procedure for obtaining the writ as to deny to the court of the county in which the petitioner was in custody the right to inquire into the cause of custody until the petitioner had exhausted her right under the statute (Laws of 1907, ch. 30, p. 33). That is, in the face of the constitutional mandate, the court of the county in which the petitioner was in custody was denied the right to inquire into the cause of custody until the petitioner had exhausted her remedy of having the question of the legality of her confinement determined by the superior court for the county committing her in the first instance.

The act in question is either constitutional or unconstitutional. It is a play on words to say that the statute is directory and not mandatory. Such holding extracts the teeth from the statute. If there is to be no penalty, the statute is without force. The penalty, of course, is the exclusion of the testimony of the witnesses whose names have not been listed as required by the statute.

I am not in accord with the majority on another phase; that is, the superior courts have ample disciplinary powers which may be exercised to compel obedience or punish suitably counsel for the defendant for failure to obey the statute.

194

. I do not concede that such power inheres in any court. I cannot conceive of any court in these United States arrogating unto itself the right to punish as for contempt any attorney for failing to conform to the procedural requirements prescribed by court rule or by statute. The penalty for the attorney's failure to properly proceed is, of course, visited upon his unfortunate client. If failure to furnish the prosecuting attorney with a list of the defendant's witnesses could be punished by fine or confinement as for a contempt, it would be only a step for the court to exercise such disciplinary power to thus penalize an attorney for failure to give notice of appeal, or to serve and file the statement of facts within the prescribed statutory period.

The statute in question is a reasonable exercise of the legislative power. It violates no constitutional rights of the appellant. To hold that the legislature cannot compel the defendant to serve upon the prosecuting attorney a list of the witnesses whom he intends to use at the trial, within a reasonable time preceding the trial, would be to hold that the legislature is powerless to regulate criminal procedure; and we have heretofore held that that is within the legislative province.

HERMAN, J., concurs with MILLARD, J.