[No. 30605. Department Two. January 7, 1949.]

THE STATE OF WASHINGTON, *Respondent*, v.
RICHARD HEIN, *Appellant*.[1]

[1] Reported in 201 P. (2d) 691.

*A. E. Dailey, Stanley Conroy,* and *Henry Clay Agnew,* for appellant.

*Phillip Sheridan, Harold J. Hall,* and *C. P. Brownlee,* for respondent.

SIMPSON, J.—The appellant was convicted of the crime of murder in the first degree. The evidence introduced at the trial, aside from the written confession, was circumstantial.

The slain man, James Moore, was of the age of seventy-nine years, somewhat crippled and partially blind. He lived in a small two-story house near the town of Hartford, in Snohomish county. November 18, 1947, his body was found lying face up on the floor of his house. The condition of the body indicated that death had occurred a considerable time before its discovery. Beside him were blood-stained pieces of wood, portions of a white cane, and particles of glass which evidently came from a broken light bulb located in the ceiling. He had been badly beaten about the head and face, and his throat cut in such manner as to practically sever the head from the body. No fingerprints were found upon any of the articles in the room.

The appellant, fourteen years of age, lived with his mother and stepfather, within two blocks of Mr. Moore's residence. He had been attending junior high school for about a month prior to the murder. He was acquainted with Mr. Moore, and had been in his house on one occasion.

November 17, 1947, appellant talked to two girls, mentioned the murder, and told them to look in the newspapers for the news. At that time, nothing had appeared in the newspapers concerning the murder. Appellant, questioned by several county officials, denied that he committed the crime. He was arrested, and a full confession, written on school paper and signed by him, was found in his possession. The confession read as follows:

"Nov. 17, 1947

"I, Dick Hein, better known as Richard Hein, am going to write a confession to the murder of James Moore, Residence of Lake Stevens, Washington. This is how it happened: I was walking around the neighborhood smoking when I thought I would go in and find out how Jim's wife was get-ing along at the hosipitle at Monroe. We talked for about five mintuets. Then I pick up a cane, smash the light bulb, and start beating Jim. I busted the cane all to hell on his head, then I hit him with a heavy peace of wood. He still groaned with pain so I took up a knife and cut his throat and took the money he had with him which amounted up to $15.80 and got out of there.    Dick or Richard Hein

"P. O. Box 99
"Hartford, Wash."

The first assignment of error has to do with the refusal of the court to allow a certain witness to testify. The question of the witness' right to testify arose in the following manner: Inez Pitzer, who had attended junior high school with appellant, called as a witness for the state, testified, on cross-examination, that appellant had told her that he had murdered him (Mr. Moore). The testimony on cross-examination was:

"Q. What happened that day that led up to this conversation? Do you remember that? A. Well, my girl friend and I, when he passed us, we remarked on his hat. We said that it was a pretty hat and we liked it. Q. Then, what happened after you remarked about the pretty hat? · A. Well, he just turned around and said that he murdered a guy for it, and we didn't believe him because we thought he was joking, and he said it in a joking way. Q. He said he murdered a man for the hat? A. Yes. Q. Do you remember what kind of a hat that it was? A. It was a red hunting hat."

During the time appellant's evidence was being submitted to the jury, Inez Pitzer was called to the witness stand, and the following occurred:

"DIRECT EXAMINATION

"BY MR. CONROY: Q. Will you give your name, please? A. Inez Pitzer. Q. Are you the girl that testified this morning? A. Yes. Q. And you mentioned a red hat Richard Hein was wearing, this morning. Do you remember that,

Inez? A. Yes, uh-huh. Q. I give you what we have here as Defendant's Exhibit Number '1', and ask you if you have seen this hat before, and if that is the hat that Richard Hein was wearing? MR. SHERIDAN: I object to this witness testifying, Your Honor. I do not observe her name on the defendant's list of witnesses. THE COURT: Well, if it is not there, the objection will be sustained. MR. DAILEY: She is here as a State's witness, if Your Honor please. THE COURT: That doesn't make any difference. She is not on the stand as the State's witness now. MR. DAILEY: Give us an exception, Your Honor, to His Honor's ruling. MR. CONROY: All right, Inez. I guess that's all. Thank you."

It is admitted that the name of the witness, Inez Pitzer, was not on appellant's list of witnesses. Counsel for appellant take the position that the appellant was, by the ruling of the court, deprived of his constitutional right to have witnesses testify on his own behalf. The trial court based its ruling on the provisions of Rem. Rev. Stat., § 2050 [P.P.C. § 131-2], which provides that a defendant in a criminal case must, within five days after the prosecuting attorney files his list of witnesses, file with the clerk "a list of the witnesses which the defendant intends to use at the trial."

Counsel for the state argue that the objection is not well taken, because counsel for appellant, when the witness was called and objection was made to her testifying, did not make any statement to show the nature of the testimony which they expected Miss Pitzer would give.

The statute to which we have just referred, was passed in its present form in 1925, and has come to the attention of this court on several occasions. In *State v. Sickles,* 144 Wash. 236, 257 Pac. 385, we considered the validity of the statute, in view of the provisions of Art. 1, § 22, of our state constitution, which gives a defendant the right to compulsory process in order to compel the attendance of witnesses. This court interpreted the statutory constitutional provision, as follows:

"We think in this statute a reasonable time is provided. But if the defendant did not know that certain witnesses were important to his defense at that time, and learns of them later, he should be entitled to furnish a list of such witnesses and procure compulsory process for their atten-

dance. Indeed, this constitutional right obtains at all times to the end of the trial. That was what was done to further the attainment of justice on behalf of the prosecution in the *Bokien* case, *supra* [*State v. Bokien*, 14 Wash. 403, 44 Pac. 889]. That was what should have been done in this case. In this case, counsel for respondent, the defendant, made an offer of proof of what each individual witness would testify to. He also made an offer to show that the defense did not know of the witnesses until the night before the trial. In such case the exclusion of the testimony of the witnesses for the defendant would prevent the defendant from having a fair trial, as guaranteed by the constitution."

Our holding in the companion case of *State v. Adams*, 144 Wash. 699, 257 Pac. 387, appears in this statement:

"The trial court made the same order in this case as was made in the *Sickles* case, *ante* p. 236. . . .

"What he should have done would have been to call for reasons, if any, why the list of witnesses had not been furnished by the defendant earlier, and exercised his discretion as to whether the witnesses would be allowed to testify on behalf of the defendant, although no list of witnesses had been furnished by defendant or his counsel before trial."

It appears in *State v. Lunsford*, 163 Wash. 199, 300 Pac. 529, that the defendant offered as a witness a woman whose name had not been listed as a witness and who had not been subpoenaed. In that case, we explained the rule further by holding:

"Upon such a situation arising as that now under discussion, *an offer of proof should be made, stating, briefly, the substance of the testimony which will be given by the witness whose testimony is desired.* There is nothing in the record before us from which it can be determined that Mrs. Dennison would have testified to any facts material to the issues, or that her testimony would have been admissible in evidence. In the *Sickles* and *Adams* cases above cited, the respective defendants were not allowed to introduce any testimony whatever save their own. In the case at bar, appellant presented much testimony on his behalf, and an entirely different question is presented upon the assignment of error now under discussion.

"It is a very simple thing for a defendant to make a statement by way of an offer of proof, embodying the substance of what he believes will be the testimony of a witness offered on his behalf. To hold that, upon this matter, the action of the trial court constituted reversible error, might result in a ridiculous situation if, after reversal of the judgment of guilty, upon the case once more coming on for trial, it should appear that the witness whose testimony was desired by defendant could give no testimony which was pertinent or which under the law was admissible. *Because of the failure of appellant to make any offer of proof as to the facts concerning which Mrs. Dennison would testify, we find no reversible error in the ruling of the trial court refusing to allow the witness to be sworn.*" (Italics ours.)

The facts in *State v. Martin,* 165 Wash. 180, 4 P. (2d) 880, show that the trial court refused to allow two witnesses to testify who were not named on defendant's list of witnesses, though he intended to call them, and who were present at the trial in response to a subpoena issued at the direction of the court. Defendant's counsel made an offer of proof which showed that the evidence which would be given by the witnesses was competent. This court analyzed our former opinions, and, in reversing the judgment of the trial court, held:

"Applying to this situation the doctrine of *State v. Sickles* and the other cases above cited, we do not hesitate to decide that the trial court abused its discretion in not allowing the rejected witnesses to testify; for the only purpose the statute was designed to serve—*i.e.,* to guard the state against an unexpected defense or against inability to attack the testimony of unscrupulous witnesses—was not present in this case; and there was no reason whatever for penalizing the appellant for not complying with the statute, however inexcusable his neglect may have been, when his noncompliance put the state to no disadvantage.

"The respondent argues that this holding would render the statute meaningless and useless in every conceivable case, but with this we can not agree. If, in such a case as this, the state should claim surprise, it might become the duty of the court, not to declare that the appellant's evidence should not be received, but that the state should have a reasonable opportunity to prepare itself against surprise; for the constitution, by guaranteeing an accused person the right to defend himself and to compel the attendance of

witnesses by the court's own process, necessarily gives him the right to have attending witnesses heard." .

Our last case dealing with the statute under consideration is *State v. Thomas,* 8 Wn. (2d) 573, 113 P. (2d) 73. In that case, this court again reviewed its former opinions and then definitely followed the holding in the *Lunsford* case to the effect that, if a defendant desired to call a witness who had not been mentioned in the list required by statute, he must make a formal offer of proof.

While there are some statements made in our decided cases which lend weight to a contrary conclusion, we are persuaded that, in any case, a defendant, in order to secure the testimony of a witness whose name has not been placed on the witness' list, must make a statement outlining the testimony which he seeks to secure from the witness. The purpose of making a formal offer of proof is to inform the court and counsel concerning the reason for calling the witness, so that the court may ascertain the nature of the evidence and admit it, if competent, or allow the state time to meet unexpected testimony.

We hold that the court did not abuse its discretion in refusing to allow the witness, Inez Pitzer, to testify when she was called as a witness for appellant.

The next assignment of error concerns the court's refusal to allow a red hat to be admitted in evidence. No sustaining authority is cited to indicate error, and we are not acquainted with any case which holds that a trial court is guilty of an abuse of discretion in holding as Judge Bell did in this case. There was no indication, at the time the offer was made, that the hat, if admitted in evidence, would tend to prove or disprove any material charge in the information.

Appellant contends that the trial court committed error when it sustained an objection made by the prosecuting attorney to a question asked of appellant concerning a conversation he had with his brother. It is our conclusion that the court was correct in holding that the evidence was hearsay.

The last assignment of error has to do with the question concerning the possession of money by appellant. There was evidence produced by the state to the effect that, shortly after the death of Mr. Moore had been ascertained, appellant had in his possession a ten-dollar bill and a one-dollar bill. The manifest purpose of the evidence was to show that the motive of murder was robbery. In explaining the possession of the money, appellant testified that he had received it from a man named Magnuson, in payment for taking part in a wrestling bout. The court sustained an objection to the question, "Why did he pay you money for that"? Clearly, the court's ruling was correct. There was no useful purpose to be served by receiving evidence concerning the reason for Magnuson paying appellant to take part in a wrestling match. Appellant had the benefit of the evidence concerning the source of the money he had in his possession. He was entitled to that evidence, and no more. Appellant received a fair and impartial trial.

The judgment based on the verdict of the jury is affirmed.

MALLERY, C. J., MILLARD, ROBINSON, and SCHWELLENBACH, JJ., concur.

February 8, 1949. Petition for rehearing denied.