[No. 828-2.    Division Two.    January 22, 1974.]

THE STATE OF WASHINGTON, *Respondent*, v. LOUIS CLIFTON GRANT, *Appellant*.

*George W. Dixon, Gary G. Weber* and *Robert A. Klein*, for appellant (appointed counsel for appeal).

*Ronald L. Hendry, Prosecuting Attorney,* and *Joseph D. Mladinov, Special Counsel,* for respondent.

PETRIE, J.—The defendant was convicted by jury verdict of five felonies as alleged in a multi-count information. One of the felonies occurred on March 11, 1972. The error assigned on appeal has no effect upon that count. Accordingly, as to that count, the judgment is affirmed.

The other four counts allege that the crimes were committed "on or about the 7th day of April, 1972." All the evidence indicated that the crimes occurred within a 4-hour period after 10:30 p.m. that date. At trial, after the prosecution rested (subject only to reopening to establish venue), and the court had recessed overnight, the defense moved for permission to present alibi testimony based upon evidence which the defense assertedly had discovered for the first time during the evening's recess. The trial court denied the motion for the reason that the defense had not complied, upon demand, with the provisions of RCW 10.37.033,[1] the so-called "notice of alibi" statute.

---

[1]RCW 10.37.033 provides:

"In all cases where an information has been filed against a defendant or an indictment returned, the prosecuting attorney may, not less than eight days before the case is set to be tried, serve upon such defendant or his counsel and file a demand which shall require that if such defendant intends to offer, for any purpose whatever, testimony of any person which may tend to establish the defendant's presence elsewhere than at the scene of the crime at the time of its commission, *the defendant must within four days thereafter serve* upon such prosecuting attorney *and file a bill of particulars which shall set forth* in detail the place or places *where the defendant claims to have been, together with the names,* post office addresses, residences, and places of employment *of the witnesses upon whom the defendant intends to rely* to establish his presence elsewhere than at the scene of the crime at the time of its commission. *Unless the defendant shall* pursuant to such demand, *serve and file such bill of particulars, the court,* in the event that such testimony is sought to be interposed by the defendant upon the trial for any purpose whatever, or in the event that a witness not mentioned in such bill of particulars is called by the defendant to give such testimony, *may exclude such testimony,* or the testimony of such witness. In the event that the court shall allow such testimony, or the testimony of such witness, it must, upon motion of the prosecuting attorney, grant an adjournment not to exceed one week." (Italics ours.) The statute has now been superseded by recently promulgated criminal rules which became effective July 1, 1973. *See* particularly comment following CrR 4.7(h)(7), 82 Wn.2d 1147.

In this appeal, the only error assigned is that the trial court abused its discretion in denying the motion to allow testimony of alibi witnesses on behalf of the defendant. The substance of the error is that the court effectively denied the defendant the right to have witnesses testify in his behalf as guaranteed by provisions of article 1, section 22 of the Constitution of the State of Washington[2] and the sixth and fourteenth amendments to the United States Constitution.

██    We note, preliminarily, that it has been established definitively that the Fifth Amendment privilege against self-incrimination is not violated by a requirement that the defendant give notice of an alibi defense and disclose the names of his alibi witnesses. *Williams v. Florida,* 399 U.S. 78, 26 L. Ed. 2d 446, 90 S. Ct. 1893 (1970). However, due process requirements of the Fourteenth Amendment forbid enforcement of alibi rules unless reciprocal discovery rights are given to criminal defendants. *Wardius v. Oregon,* 412 U.S. 470, 37 L. Ed. 2d 82, 93 S. Ct. 2208 (1973).[3]

██    We note, further, that the statute relied upon by the trial court, RCW 10.37.033, does not mandate imposition of the major sanction—exclusion of testimony of alibi evidence—for failure to comply with the notice requirements. Rather, the statute invites employment of the court's discretionary power by language that the court "*may* exclude such testimony." (Italics ours.) Where the decision of a trial court is a matter of discretion, it will not be disturbed on review except on a clear showing of abuse of discretion, *i.e.,* discretion manifestly unreasonable, or exercised on un-

---

[2]As amended by the Tenth Amendment, article 1, section 22 provides in part: "In criminal prosecutions the accused shall have the right . . . to have compulsory process to compel the attendance of witnesses in his own behalf, . . ."

[3]The *Wardius* opinion was filed after the defendant's brief had been filed in this court. We note, however, that the defendant had been granted a pretrial discovery order sufficiently broad and continuing in nature to assure reciprocal discovery rights would not be violated. *See also* CrR 4.7 (h) (2), which did not become effective until July 1, 1973, and which now imposes a continuing duty to disclose. 82 Wn.2d 1146.

tenable grounds, or for untenable reasons. *State ex rel. Carroll v. Junker,* 79 Wn.2d 12, 482 P.2d 775 (1971). Judicial discretion is not amenable to a hard and fast definition; it means a sound judgment which is not exercised arbitrarily, but with regard to what is right and equitable under the circumstances and the law, and which is directed by the reasoning conscience of the trial judge to a just result. *State ex rel. Clark v. Hogan,* 49 Wn.2d 457, 303 P.2d 290 (1956).

The record in the instant case reveals that the information, filed April 24, 1972, fixed the dates involved in each of the counts charged. By May 1, 1972, two counsel had been appointed by the court to defend the defendant. The prosecution made timely demand for names of alibi witnesses on the 2nd of June pursuant to the provisions of RCW 10.37.033. It was not until the *last* day of trial, June 21, that the defendant moved for the allowance of "newly discovered" alibi witnesses.

The offer of proof included a declaration that military records at Fort Lewis indicate the defendant was credited with having served in the capacity of "CQ runner" on the night of April 7, 1972; that the duty sergeant (who, incidentally was in court and prepared to testify) would testify that he was with the defendant from approximately 5 p.m. on April 7, 1972, to approximately 8 a.m. the following day; that the same sergeant "in his own handwriting signed the CQ log or charge of quarter's log at 12 midnight, also reflecting that he and Louis Clifton Grant were together at the quarters."

The record also reveals that one of defendant's counsel made three visits to Fort Lewis after having been appointed to defend the defendant. On the first trip he ascertained that the defendant had been on duty on the date charged in one of the counts in the information. That count was subsequently dismissed prior to trial. On the second visit counsel was advised that key personnel were on temporary duty in California. He left a copy of his professional card and asked to be advised when the personnel returned

to Fort Lewis. Not having been advised further, he made a third visit, at which time command personnel were attending a conference. After waiting approximately an hour, he again left a card and asked to be contacted at a future date. He had no further contact with the military until the trial recessed on June 20, 1972, following which the "newly discovered" alibi testimony was revealed to him.

The prosecution claimed surprise and asked the trial court to exclude the alibi evidence because of defendant's failure to advise the prosecution pursuant to RCW 10.37.033 of his intention to offer testimony as to the counts which charged him with commission of crimes on April 7, 1972.

In denying the defendant's motion, and after noting that the prosecution's demand for notice had been filed and served since June 2, 1972, the trial court indicated:

> I think it now comes too late to ask to call witnesses on alibi. The statute certainly was passed for some particular reason, and has to be complied with. I think that the facts which you are now suggesting, should have been discovered sometime certainly subsequent to the 1st day of May of this year, so the Motion will be denied.

It is apparent, therefore, that because of counsel's failure to discover earlier that which was subsequently discovered, the defendant has been denied the right to present evidence which, on its face and if believed by a jury, would be seriously supportive of his asserted alibi. Within the restrictive parameters of our reviewing authority, we must ascertain whether or not such a rigid application of the sanction authorized by RCW 10.37.033 was warranted.

We are not aware of any prior appellate interpretation of the notice of alibi statute in this jurisdiction. However, we may approach our analysis by reasoning analogously from prior interpretations of a somewhat similar statute, RCW 10.37.030, which authorizes sanctions against defendants in criminal cases when they fail to serve upon the prosecuting attorney "a list of the witnesses which he [the defendant] intends to use at the trial . . ."[4]

---

[4]RCW 10.37.030 has also been superseded by criminal rules effective July 1, 1973. See 82 Wn.2d 1146.

In *State v. Sickles,* 144 Wash. 236, 257 P. 385 (1927), five witnesses for the defendant, not included in any list previously served, were not allowed to testify. The occasion to use one of the witnesses arose first during the trial, and there was a suggestion that the defense did not know of the other witnesses until the evening before trial. The offers of proof indicated that the excluded testimony would have been otherwise admissible. The trial court granted defendant's motion for new trial, which was affirmed on appeal, because "the exclusion of the testimony of the witnesses for the defendant would prevent the defendant from having a fair trial, as guaranteed by the constitution." *State v. Sickles, supra* at 240-41. After reciting the provisions of article 1, section 22 of the state constitution, the court declared:

> Under the above constitutional provision, no court has the right to deprive a person on trial on a charge of crime or misdemeanor of the right to produce witnesses in his defense and to have compulsory process therefor.
> . . . Indeed, this constitutional right obtains at all times to the end of the trial.

*State v. Sickles, supra* at 240.

Similarly in *State v. Martin,* 165 Wash. 180, 4 P.2d 880 (1931) the court determined that the trial court had abused its discretion in not allowing defense witnesses to testify because no list of witnesses had been served upon the prosecuting attorney. It should be noted, however, in *Martin,* as in *Sickles,* the prosecution did not claim surprise or other disadvantage. The court did declare that there was no reason for penalizing the defendant for not complying with the statute, however inexcusable his neglect may have been, when his noncompliance put the state to no disadvantage. The court, in *Martin,* was seriously split, but in the lead opinion, the author sought to advise trial courts of a reasonable procedure to follow if the state, in the future, should be placed in a disadvantageous position because of the defendant's noncompliance with the statute:

> If, in such a case as this, the state should claim surprise, it might become the duty of the court, not to declare that

the appellant's evidence should not be received, but that the state should have a reasonable opportunity to prepare itself against surprise; for the constitution, by guaranteeing an accused person the right to defend himself and to compel the attendance of witnesses by the court's own process, necessarily gives him the right to have attending witnesses heard.

*State v. Martin, supra* at 187.

To the prosecutorial suggestion that chaos would result by permitting flexible application of sanctions for noncompliance with the statute, the author of the lead opinion in *Martin* noted that the courts had ample disciplinary powers to deal with those who would unduly delay the court's proceedings or otherwise trifle with the court. The author then was prompted to comment:

By exercising such disciplinary powers, prompt and orderly procedure can be maintained, the statute enforced and the constitution respected, so that no case shall be submitted for decision without all of the available material facts being made known to the trier of the facts, to the end that substantial justice shall be done.

*State v. Martin, supra* at 188.[5]

In the case at bench, we, too, deem it imperative that in the absence of totally inexcusable neglect no criminal case should be submitted to the trier of the facts without all available material facts being made known to the trier of the facts, not only to the end that substantial justice shall be done, but also because in performing its high function in the best way, justice must satisfy the appearance of justice. *State v. Madry,* 8 Wn. App. 61, 504 P.2d 1156 (1972).

There can be no doubt that the learned and experienced trial judge conscientiously reasoned that the efforts of two court-appointed defense counsel ought to have uncovered the proffered and rejected evidence at least before the com-

[5]We note, incidentally, that a subsequent court, in a unanimous departmental opinion, commented favorably upon the suggestions formerly embodied in the lead opinion in *Martin. State v. Thomas,* 8 Wn.2d 573, 113 P.2d 73 (1941). Additional cases are collected and analyzed in *State v. Hein,* 32 Wn.2d 315, 201 P.2d 691 (1949).

mencement of trial. We believe, however, that the constitutional mandate, which directs the court to compel the attendance of witnesses on behalf of a defendant charged with crime, is so strong that slight delays in the otherwise orderly presentation of evidence must be tolerated within the judicial system unless they are occasioned by insufferable dereliction of duty by those whose function it is to assist the court. We do not find that degree of dereliction of duty in the case at bench.

Insofar as the judgment appealed from sentences the defendant to confinement following his conviction of the crime committed on March 11, 1972, it is affirmed; insofar as the judgment appealed from sentences the defendant to confinement following his conviction of the crimes alleged to have been committed on April 7, 1972, it is reversed, and new trial is granted as to those counts in the information.

PEARSON, C.J., and ARMSTRONG, J., concur.