THE STATE OF WASHINGTON, *Respondent*, v. MICHAEL NELSON, ET AL, *Petitioners*.

*J. Benedict Zderic,* for petitioners.

*John C. Merkel, Prosecuting Attorney,* and *C. Danny Clem, Deputy,* for respondent.

REED, J.—The defendants, Michael and Daniel Nelson, seek review by writ of certiorari of an order of the Superior Court for Kitsap County which found the defendants in contempt of court for refusing to obey preceding orders to answer certain discovery requests by the State. Defendants contend that the trial court abused its discretion (1) in finding defendants in contempt and by ordering imprisonment until disclosure and (2) by imposing the added sanction of excluding defense witnesses if their names and statements were not disclosed by a certain date.

We find no abuse of discretion and affirm the trial court's orders for the reasons herein set forth.

The defendants were charged in superior court with delivery of a controlled substance and came before the court for a scheduled omnibus hearing on May 5, 1975. On the advice of their attorney defendants refused, despite court orders, (1) to state the general nature of their defense, (2) to state whether they intended to rely on the defense of alibi and, if so, to provide a list of alibi witnesses and (3) to provide a list of general defense witnesses and their statements. The State had requested this and other information pursuant to CrR 4.5 and 4.7.[1] The defendants had

---

[1]CrR 4.7 provides in part as follows:

"(b) **Defendant's Obligations.**

"(1) Except as is otherwise provided as to matters not subject to disclosure and protective orders, the defendant shall disclose to the prosecuting attorney the following material and information within his control no later than the omnibus hearing:

"(i) the names and addresses of persons whom the defendant intends to call as witnesses at the hearing or trial, together with any written or recorded statements and the substance of any oral statements of such witness.

"(2) Notwithstanding the initiation of judicial proceedings, and subject to constitutional limitations, the court on motion of the prose-

also requested and received certain information from the State pursuant to the same rules.

On inquiry by the trial judge as to their reasons for refusing discovery the defendants' attorney stated that it was "on the grounds that the constitution provides that no man shall be compelled to give evidence against himself" and that a defendant may not be required to provide any information "to assist the prosecution," this being violative of due process under the Fifth and Fourteenth Amendments and "pertinent provisions of the State constitution."

The trial judge then explained to each defendant that the court would order disclosure and that refusal to comply would result in a finding of contempt and that the defendants would be jailed until compliance. Defendants were further advised that they could purge themselves of the contempt and secure release by compliance with the court's order at any time. The court then ordered each defendant to comply and each time received the response, "I refuse to answer on constitutional grounds." The contempt order followed and defendants were sentenced to jail until they should answer; the court, on the State's motion, imposed the added sanction · of excluding all defense witnesses whose names and statements were not furnished by May 15, 1975, at 4 p.m. It is from these orders that defendants seek relief.

Defense counsel, in colloquy with the trial court and the State's attorney, alluded on several occasions to the Fifth and Fourteenth Amendment privileges against self-incrimination and to the theory that his clients were being compelled to aid the State in making its case-in-chief, and also made rather loose references to "due process" and "other United States and Washington constitutional provisions."

---

cuting attorney or the defendant, may require or allow the defendant to:

"... 

"(xii) state whether or not he will rely on an alibi and, if so, furnish a list of alibi witnesses and their addresses;

"...

"(xiv) state the general nature of his defense."

■ Defendants would appear to have abandoned their Fifth Amendment claims as they are not urged in their briefs nor were they argued to this court. Rather, defense counsel now centers on a claim of abuse of discretion arising out of the contempt finding and the sanctions imposed, and argues that the exclusion of witness sanction is proscribed by the sixth amendment to the United States Constitution and by article 1, section 22 of the Washington State Constitution. Despite this awkward posture of the matter as it reaches us, we feel that fundamental rights under the Fifth Amendment are before us and must be addressed.

We thus see the real issues as: (1) Do our recently adopted criminal discovery rules, CrR 4.5 and 4.7, violate the Fifth Amendment privilege against self-incrimination and compel a criminal defendant to be a witness against himself? (2) Was the refusal to obey the court's order to make disclosure under the rules contemptuous even though based on an apparent good faith claim of constitutional privilege? (3) Was imprisonment until answer an appropriate sanction?

■ We do not address the asserted issue that the sanction of witness exclusion violates the above state and federal constitutional provisions,[2] because that sanction, in view of the opportunity for purgation by answer, has not as yet been applied and may never be, nor can we speculate that its enforcement at trial time would necessarily prejudice the defendants.

In *Williams v. Florida*, 399 U.S. 78, 26 L. Ed. 2d 446, 90 S. Ct. 1893 (1970), the United States Supreme Court firmly established that Fifth and Fourteenth Amendment rights are not infringed by state rules compelling pretrial disclosure of alibi defense and the identity of alibi witnesses. Due process is served, the court noted, when state procedures provide for reciprocal disclosure to the defendant. The Florida rules provided generally for broad two-way dis-

---

[2]Both constitutions provide *inter alia*, for compulsory process to compel attendance of witnesses on the defendants' behalf.

covery, and the alibi rule itself contained a provision for state disclosure of alibi rebuttal witnesses. No Sixth Amendment issues were presented because the defendant in that case chose to comply with the rule and avoid the witness exclusion sanction.

In *Wardius v. Oregon*, 412 U.S. 470, 37 L. Ed. 2d 82, 93 S. Ct. 2208 (1973), the defendant had refused to make alibi disclosures and his witnesses were excluded at trial. The resulting conviction was reversed on Fourteenth Amendment grounds, the court finding that Oregon procedures were wanting in due process in that they did not provide for reciprocal discovery as did the Florida rules. The *Wardius* court did not directly address the Fifth Amendment question except to refer to its previous holding in *Williams* by saying, in part, in footnote 1 at page 471:

> Moreover, we held that "the privilege against self-incrimination is not violated by a requirement that the defendant give notice of an alibi defense and disclose his alibi witnesses."

In the case at bench the defendants were required to provide information, not only as to their "special defense" of alibi, but also as to the general nature of their defense, and a list of general defense witnesses with their statements, if any. The question thus posed is whether the holdings of *Williams* and *Wardius* apply to such broad discovery.

The pathway to broad criminal discovery in Washington state has been a tortuous one. *See* G. Revelle and D. Ashbaugh's article, *Criminal Pre-Trial Discovery—A Proposal*, 3 Gonzaga L. Rev. 48 (1968), wherein the authors trace the development of criminal discovery in Washington State from *State v. Payne*, 10 Wash. 545, 39 P. 157 (1895) through *State v. Allen*, 128 Wash. 217, 222 P. 502 (1924); *State v. Morrison*, 175 Wash. 656, 27 P.2d 1065 (1933), *State v. Thompson*, 54 Wn.2d 100, 338 P.2d 319 (1959), *State v. Mesaros*, 62 Wn.2d 579, 384 P.2d 372 (1963), and *State v. Gilman*, 63 Wn.2d 7, 385 P.2d 369 (1963), to the case of *State v. Boehme*, 71 Wn.2d 621, 430 P.2d 527 (1967). The

authors point to the *Boehme* case as a decision which appears to be a "beacon of direction to the lower courts" when that decision states at page 632:

> At this point, we momentarily pause to observe that the rules of discovery are designed to enhance the search for truth in both civil and criminal litigation. And, except *where the exchange of information is not otherwise clearly impeded by constitutional limitations or statutory inhibitions, the route of discovery should ordinarily be considered somewhat in the nature of a 2-way street,* with the trial court regulating traffic over the rough areas in a manner which will insure a fair trial to all concerned, neither according to one party an unfair advantage nor placing the other at a disadvantage.

(Italics ours.)

The *Williams* court in its discussion of "due process" or "fair play" expressed the same philosophy at page 82, when it said:

> The adversary system of trial is hardly an end in itself; *it is not yet a poker game in which players enjoy an absolute right always to conceal their cards until played.* We find ample room in that system, at least as far as "due process" is concerned, for the instant Florida rule, which is designed to enhance the search for truth in the criminal trial by insuring *both the defendant and the State* ample opportunity to investigate certain facts crucial to the determination of guilt or innocence.

(Footnote omitted. Italics ours.)

At page 85, the *Williams* court further stated:

> In the case before us, the notice-of-alibi rule by itself in no way affected petitioner's crucial decision to call alibi witnesses or added to the legitimate pressures leading to that course of action. At most, the rule [alibi] only compelled petitioner *to accelerate the timing of his disclosure, forcing him to divulge at an earlier date information that the petitioner from the beginning planned to divulge at trial.* Nothing in the Fifth Amendment privilege entitles a defendant as a matter of constitutional right to await the end of the State's case before announcing the nature of his defense, any more than it entitles him to await the jury's verdict on the State's case-in-

chief before deciding whether or not to take the stand himself.

(Italics ours.)

The court in *Williams* reasoned that without pretrial disclosure the state might well obtain a delay or continuance if truly surprised by defense testimony and that such relief would not contravene either Fifth or Fourteenth Amendment guaranties; that pretrial disclosure would in large measure avoid the necessity of a disrupted trial without offending a criminal defendant's basic rights.

■ We hold that the rationale of *Williams* and *Wardius* as applied to pretrial disclosure alibi defense and alibi witnesses applies equally to a forced pretrial disclosure of more general information such as that provided for in CrR 4.5 and 4.7 because they do not infringe upon a defendant's Fifth Amendment rights. These are all matters which must ultimately come to light should the defendant choose to proceed with a defense. The rules simply "accelerate the timing of his disclosure." The purpose of the rules is to prevent last-minute surprise with its trial disruption and continuances; they encourage early disposition through negotiations and ultimately benefit the public in the saving of unnecessary expense. Neither do our criminal discovery procedures offend against due process. They provide for the type of reciprocal discovery which was present in the *Williams* case but critically absent in the *Wardius* case. CrR 4.7 reads in part as follows:

(a) **Prosecutor's Obligations.**

(1) Except as otherwise provided by protective orders or as to matters not subject to disclosure, the prosecuting attorney shall disclose to the defendant the following material and information within his possession or control no later than the omnibus hearing:

(i) the names and addresses of persons whom the prosecuting attorney intends to call as witnesses at the hearing or trial, together with any written or recorded statements and the substance of any oral statements of such witnesses;

. . .

(d) **Material Held by Others.** Upon defendant's re-

quest and designation of material or information in the knowledge, possession or control of other persons which would be discoverable if in the knowledge, possession or control of the prosecuting attorney, the prosecuting attorney shall attempt to cause such material or information to be made available to the defendant if the prosecuting attorney's efforts are unsuccessful and if such material or persons are subject to the jurisdiction of the court, the court shall issue suitable subpoenas or orders to cause such material to be made available to the defendant.

(e) **Discretionary Disclosures.**

(1) Upon a showing of materiality to the preparation of the defense, and if the request is reasonable, the court in its discretion may require disclosure to the defendant of the relevant material and information not covered by sections (a), (c) and (d).

. . . .

(h) **Regulation of Discovery.**

. . . .

(2) *Continuing duty to disclose.* If, after compliance with these standards or orders pursuant thereto, a party discovers additional material or information which is subject to disclosure, he shall promptly notify the other party or his counsel of the existence of such additional material, and if the additional material or information is discovered during trial, the court shall also be notified.

In our view, therefore, the rules provide not only for reciprocal disclosure by the prosecution of alibi rebuttal witnesses who may be discovered as a result of defendant's timely disclosure of his alibi defense and his alibi witnesses as required by *Williams v. Florida, supra; cf. State v. Grant,* 10 Wn. App. 468, 519 P.2d 261 (1974), *State v. Peele,* 10 Wn. App. 58, 68, 516 P.2d 788 (1973), *State v. Krausse,* 10 Wn. App. 574, 575, 519 P.2d 266 (1974), but also provide for reciprocal discovery of the more general information which will aid both parties in preparing their cases and serve to avoid disruption of trials.

 Having determined that the trial court's orders to disclose were valid and proper, we now consider whether that court abused its discretion by finding defendants in contempt and ordering imprisonment until answer. Trial judges have the inherent power to resort to contempt pro-

cedures for the enforcement of their orders. *Keller v. Keller*, 52 Wn.2d 84, 323 P.2d 231 (1958); *State v. Caffrey*, 70 Wn.2d 120, 422 P.2d 307 (1966); *Deskins v. Waldt*, 81 Wn.2d 1, 499 P.2d 206 (1972). In addition, RCW 7.20.010 *et seq.*, provides statutory civil contempt procedures as applied to specific acts or omissions. RCW 7.20.110 authorizes confinement of a contemnor until he performs an ordered act which is still within his power to perform. *In re Stewart*, 121 Wash. 429, 209 P. 849 (1922); *Davis v. Davis*, 15 Wn.2d 297, 130 P.2d 355 (1942).

■ Defendants Nelson intentionally and purposely elected to disobey lawful trial court directives despite warnings from the court as to the probable consequences; such refusals constituted contempt without more. The element of "willfulness" is not necessary to a finding of contempt in the disobedience of a lawful court order. *Mathewson v. Primeau*, 64 Wn.2d 929, 395 P.2d 183 (1964); *State ex rel. Nicomen Boom Co. v. North Shore Boom & Driving Co.*, 55 Wash. 1, 103 P. 426 (1909); *Wright v. Suydam*, 79 Wash. 550, 140 P. 578 (1914).

■ Having properly held defendants in contempt the coercive sanctions to be imposed lay within the sound discretion of the trial court, whose action will not be disturbed absent a clear showing of an abuse of that discretion. *State v. Caffrey, supra*; *State ex rel. Carroll v. Junker*, 79 Wn.2d 12, 482 P.2d 775 (1971). The elements of judicial discretion were discussed in *State v. Grant, supra*, where it is stated at page 471:

> Judicial discretion is not amenable to a hard and fast definition; it means a sound judgment which is not exercised arbitrarily, but with regard to what is right and equitable under the circumstances and the law, and which is directed by the reasoning conscience of the trial judge to a just result. *State ex rel. Clark v. Hogan*, 49 Wn.2d 457, 303 P.2d 290 (1956).

■ Even though defendants appear to have relied in good faith on the advice of counsel that they could not be compelled to answer, they ran the risk that their confidence

might be misplaced. They fully understood the consequences of their act as did their counsel, who stated at one point when asked by the court if what the court had done placed the case in the posture desired by defense counsel, "kind of scary but it does." Defense counsel admitted he could be "dead wrong" in his position, but the defendants gave no further reason for refusing to comply with the court's orders and remained adamant. This left the trial court with no alternative but to apply the most appropriate sanctions, *i.e.*, those calculated to encourage or coerce compliance with the rules preserving, insofar as possible, a fair trial for both prosecution and defense. It was conceivable that actual imprisonment, if not the mere threat alone, would induce compliance and achieve the ends desired.

Under the circumstances of this case we find no abuse of discretion in ordering confinement until answer. We can conceive of no other sanction within those provided by CrR 4.7(h)(7)[3] which would as effectively force compliance, particularly when coupled with threatened witness exclusion.

In conclusion, the defendants have no constitutional right to refuse discovery as required by the rules and as ordered by the court. The trial court's orders finding the defendants in contempt and confining them to jail until compliance were appropriate in the circumstances and did not constitute an abuse of discretion, and those orders are affirmed.[4]

PETRIE, C.J., and PEARSON, J., concur.

---

[3]CrR 4.7 provides in relevant part:

"(7) *Sanctions*.

"(i) If at any time during the course of the proceedings it is brought to the attention of the court that a party has failed to comply with an applicable discovery rule or an order issued pursuant thereto, the court may order such party to permit the discovery of material and information not previously disclosed, grant a continuance, dismiss the action or enter such other order as it deems just under the circumstances."

[4]Defendants are not yet in jail, the learned trial judge having stayed the effect of his orders until review of the proceedings by this court.