[No. 49184-4. En Banc. June 7, 1984.]

THE STATE OF WASHINGTON, *Respondent*, v. FREDERICK H. KEVIN COE, *Appellant*.

*Frederick H. Coe,* pro se, *David Allen, Richard Hansen,* and *Allen & Hansen, P.S.,* for appellant.

*Donald C. Brockett, Prosecuting Attorney,* and *Patricia A. Thompson, Deputy,* for respondent.

STAFFORD, J.—Appellant, Frederick H. "Kevin" Coe, was charged in Spokane County Superior Court with five counts of first degree rape and one count of second degree rape. He was convicted of four counts of first degree rape. Coe appealed to the Court of Appeals which certified the cause to this court. Appellant raises eight issues:

(1) Was evidence of Coe's prior misdemeanor conviction of third degree theft properly admitted for the purpose of impeachment?

(2) Did the trial court abuse its discretion by allowing the prosecuting attorney to present evidence of Coe's sexual relations with his former girl friend?

(3) Did the trial court properly allow the prosecutor to introduce evidence of an incident for which Coe was never charged with a crime?

(4) Was it proper to cross–examine Coe regarding articles and books he had written several years before trial?

(5) Did the trial court properly require Coe to stand before the jury and repeat statements made by the rapist?

(6) Did the limited discovery authorized by the trial court violate CrR 4.7 and Coe's due process rights?

(7) Did the trial court properly admit testimony of witnesses who had been previously hypnotized?

(8) Did the court's instruction to the jury regarding the burden of proof violate Coe's due process rights?

I

Some time prior to the present case, Coe was convicted in Spokane County District Court of shoplifting. After the

conviction, he wrote a letter to the District Court Judge. During the cross examination of Coe, in the instant case, the prosecuting attorney used the conviction for the purpose of impeachment and questioned Coe extensively about the letter. The objections of defense counsel both to introduction of the prior conviction and to questions regarding the letter were overruled.

ER 609(a) provides the credibility of a witness may be attacked by evidence that the witness has been previously convicted of a crime. ER 609(a)(2) permits admission of evidence of a conviction to attack credibility if the crime "involved dishonesty or false statement, regardless of the punishment". In *State v. Burton,* 101 Wn.2d 1, 676 P.2d 975 (1984), we held "the category of crimes involving 'dishonesty' is defined to include only those crimes having elements in the nature of crimen falsi, the commission of which involves some element of deceit, fraud, untruthfulness or falsification bearing on the accused's propensity to testify truthfully." *Burton,* at 10. In so holding, we recognized that the purpose underlying ER 609(a)(2) (*i.e,* to shed light on the defendant's credibility as a witness) is not served where a prior conviction does not bear directly on a defendant's propensity for truthfulness.

In *Burton,* shoplifting was found to lack the requisite element of untruthfulness, and therefore was held inadmissible under ER 609(a)(2). This holding is in accord with the position adopted by numerous federal circuit courts. As was stated in *United States v. Ortega,* 561 F.2d 803, 806 (9th Cir. 1977):

> Human experience does not justify an inference that a person will perjure himself from proof that he was guilty of petty shoplifting . . . An absence of respect for the property . . . is not an indicium of a propensity toward testimonial dishonesty.

*See United States v. Ashley,* 569 F.2d 975 (5th Cir.), *cert. denied,* 439 U.S. 853 (1978). Accordingly, evidence of Coe's prior conviction of third degree theft should not have been admitted.

■ Cross examination regarding the letter sent to the District Court Judge was also improper. Since evidence of the underlying conviction was inadmissible, it follows that Coe's letter concerning that crime should have been excluded. Moreover, even if evidence of the conviction could have been properly admitted, this cross examination would have exceeded the scope of permissible impeachment. ER 609(a) provides: "For the purpose of attacking the credibility of a witness, evidence that he has been convicted of a crime shall be admitted if elicited from him or established by public record during cross examination . . ." Cross examination on prior convictions under ER 609(a) is limited to facts contained in the record of the prior conviction: the fact of conviction, the type of crime, and the punishment imposed. *State v. Coles*, 28 Wn. App. 563, 625 P.2d 713 (1981); *see State v. Brewster*, 75 Wn.2d 137, 449 P.2d 685 (1968); *State v. Lindsey*, 27 Wn.2d 186, 177 P.2d 387 (1947). Cross examination exceeding these bounds is irrelevant and likely to be unduly prejudicial, hence inadmissible. *See State v. Coles, supra* at 572–73.

## II

At trial, Coe's former girl friend testified as a witness for the prosecution. Her testimony included a description of various details of her sexual relationship with him. For example, she testified Coe indicated he liked to masturbate, and that he used certain vulgar terms while they were engaged in sexual activity. She also declared Coe would frequently perform cunnilingus on her and that he would fondle his penis and insert his fingers in her vagina prior to having sexual intercourse.

Appellant contends the admission of this testimony was both irrelevant and prejudicial. The State argues the testimony was relevant to establish modus operandi and identity. In support of its argument, the State notes the statements and actions of the rapist bore similarities to the statements and actions of Coe in his sexual relationship with his girl friend.

■ The propriety of admission of the challenged testimony is governed by ER 404(b), which provides:

Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.

Before evidence of prior crimes, wrongs, or acts can be admitted, the evidence must be shown to be logically relevant to a material issue before the jury. If the evidence is relevant, its probative value must be shown to outweigh its potential for prejudice. *State v. Saltarelli,* 98 Wn.2d 358, 361–62, 655 P.2d 697 (1982); *State v. Goebel,* 40 Wn.2d 18, 21, 240 P.2d 251 (1952).

As noted above, Coe's sexual acts with his girl friend were admitted to establish modus operandi. Where prior acts are sought to be admitted to show modus operandi, "the primary purpose . . . is to corroborate the *identity* of the accused as the person who likely committed the offense charged." *State v. Irving,* 24 Wn. App. 370, 374, 601 P.2d 954 (1979), *review denied,* 93 Wn.2d 1007 (1980). The method employed in committing the act must be so unique that mere proof that an accused acted in a certain way at a certain time creates a high probability that he also committed the act charged. *United States v. Silva,* 580 F.2d 144, 148 (5th Cir. 1978); *State v. Fernandez,* 28 Wn. App. 944, 949–50, 628 P.2d 818, 640 P.2d 731 (1980); *State v. Irving, supra.* "The device used must be so unusual and distinctive as to be like a signature." E. Cleary, *McCormick on Evidence* § 190, at 449 (2d ed. 1972).

A prior or subsequent crime or other incident is not admissible for this purpose merely because it is similar, but only if it bears such a high degree of similarity as to mark it as the handiwork of the accused.

*United States v. Goodwin,* 492 F.2d 1141, 1154 (5th Cir. 1974).

The requirement that the evidence be distinctive or

unusual insures that the evidence is relevant. The greater the distinctiveness of the act, the higher the probability that the defendant committed the crime. The admissibility of this highly prejudicial evidence is thus limited to those cases in which the evidence is highly relevant.

The words and actions of the perpetrator of the rape, though similar to Coe's behavior with his former girl friend, do not meet the stringent test of uniqueness required for admission to establish identity. While we make no determination as to what constitutes customary behavior in sexual relations today, we do not believe Coe's behavior in his sexual relationship with his former girl friend was sufficiently "unusual and distinctive" to warrant admission under ER 404(b). Further, we question the relevancy of an individual's behavior in a consensual sexual relationship to demonstrate modus operandi with respect to a violent nonconsensual sexual act. The trial court abused its discretion in permitting the presentation of this evidence.

### III

Appellant objects to the examination, by the prosecuting attorney, of a woman who claimed she was approached by Coe on a jogging trail. At trial, this witness testified that as she jogged along a trail in Spokane on March 8, 1981, she was approached by a man fondling what appeared to be a replica of a penis. She stated the man made several rude comments to her of an explicit sexual nature.

The witness described the man as a white male, about 6 feet tall, medium build, brown hair, clean shaven, with a definite jawline. She testified the man had an eerie sounding voice and was wearing light blue pants, a light blue sweater, and sunglasses. When she grew angry the man ran away.

The witness testified she contacted some passing motorists, who gave chase to a car that turned out to belong to Coe. Coe denied he had anything to do with the incident but acknowledged that he was in the vicinity because he was driving to the offices of the Washington Water Power

Company to pay his utility bill. The police did not charge Coe with a crime over the incident. Nevertheless, the witness identified Coe at the rape trial as the man who approached her on the jogging trail.

The State argues the testimony was properly admitted to show identity. We need not repeat our analysis previously made (section II) regarding admissibility of other crimes, wrongs, or acts. Applying this analysis, we hold the trial court improperly allowed testimony about the incident of March 8, 1981. While the actions of the man in this incident were distinctive, they were not similar to the actions of the rapist. In none of the rapes did the assailant first expose himself, nor was there testimony that any of the victims ever saw a replica of a penis. Furthermore, in contrast to the man who approached the witness and then ran away, the rapist approached his victims from behind and aggressively raped them.

The incidents here were not of such a nature that similarities created a high probability the person who committed the rapes also confronted the witness. The effect of allowing this testimony was to place Coe on trial for a crime with which he was never charged. We conclude that the trial court abused its discretion by allowing this witness to testify.

IV

We next consider the propriety of the cross examination of Coe regarding articles and books he had written several years prior to trial. On direct examination Coe was asked to describe his background. He testified he had lived in Los Angeles for a year, that he wanted to be a screenwriter, and that he had worked on a novel. During cross examination, over defense counsel's objections, the prosecuting attorney asked Coe to describe the contents of the various novels on which he had worked. One of Coe's works, entitled *Sex in the White House,* was of particular interest to the prosecuting attorney. The prosecutor asked whether the book related to any of Coe's personal experiences, a question

which Coe answered in the negative. The prosecuting attorney asked Coe to describe the sexual activities mentioned in the manuscript. Coe answered that the manuscript mentioned a "[f]ull range" of activities and stated he was "trying to tap into a specific audience" with the book. The prosecuting attorney then asked whether there was a considerable description of masturbation in the book. Coe answered "[t]here was some of that, yeah."

ER 611(b) provides:

> Cross examination should be limited to the subject matter of the direct examination and matters affecting the credibility of the witness. The court may, in the exercise of discretion, permit inquiry into additional matters as if on direct examination.

The scope of cross examination is within the discretion of the trial court. *See, e.g., State v. Young,* 89 Wn.2d 613, 628, 574 P.2d 1171, *cert. denied,* 439 U.S. 870 (1978); *State v. Robideau,* 70 Wn.2d 994, 997, 425 P.2d 880 (1967). When a defendant in a criminal case takes the stand, the court may allow cross examination in the same manner as with other witnesses. *State v. Robideau, supra; State v. Jeane,* 35 Wn.2d 423, 431, 213 P.2d 633 (1950).

By allowing the prosecuting attorney to question Coe about the details of his writings, the Superior Court abused its discretion. The implication of the cross examination seemed to be that the writings showed a lustful disposition on Coe's part. This evidence had no bearing on any element of the charges against Coe and would have been inadmissible had the prosecuting attorney attempted to present it on direct examination. *Cf. State v. Golladay,* 78 Wn.2d 121, 143, 470 P.2d 191 (1970) (trial court abused its discretion by allowing cross examination of rape defendant as to prior visit to house where prostitute lived); *State v. Whyde,* 30 Wn. App. 162, 168, 632 P.2d 913 (1981).

The evidence of Coe's sexually oriented writings was inflammatory on its face and carried with it a high probability of prejudice to his right to a fair trial. Careful consideration and weighing of both relevance and prejudice is

particularly important in sex cases, where the potential for prejudice is at its highest. *State v. Saltarelli,* 98 Wn.2d 358, 363, 655 P.2d 697 (1982).

> One need not display an imposing list of statistics to indicate that community feelings everywhere are strong against sex offenders. . . . Once the accused has been characterized as a person of abnormal bent, driven by biological inclination, it seems relatively easy to arrive at the conclusion that he must be guilty, he could not help but be otherwise. When deciding the issue of guilt or innocence in sex cases, where prejudice has reached its loftiest peak, our courts . . . [offer] scant attention to inherent possibilities of prejudice. Just when protection is most needed, the rules collapse.

Slough & Knightly, *Other Vices, Other Crimes,* 41 Iowa L. Rev. 325, 333–34 (1956).

This cross examination was both irrelevant and unduly prejudicial. The trial court abused its discretion in allowing the broad scope of cross examination by the prosecuting attorney.

## V

During the testimony of four of the victims, the court ordered Coe to read the following statement over defense objections:

> How much money do you have? Don't look at my face. Do as I say or I'll kill you. Take your clothes off. Don't say anything and I won't hurt you. Don't call the police. [Note: "How much money do you have?" was read to only two of the victims.]

This statement had been read by each participant in a lineup in which Coe was identified.

Appellant does not dispute that the sound of his voice repeating statements spoken by the rapist would be relevant evidence. He maintains, however, that the relevance of this evidence was far outweighed by the prejudicial impact of requiring him to repeat the rapist's words in front of the jury.

Where identity of the perpetrator of a crime is at issue, any evidence tending to identify the accused as the

guilty person is relevant. *State v. Smith,* 74 Wn.2d 744, 769, 446 P.2d 571 (1968), *vacated,* 408 U.S. 934 (1972); *State v. Spadoni,* 137 Wash. 684, 691, 243 P. 854 (1926). Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice to the defendant. ER 403. The trial judge has wide discretion in balancing the probative value of evidence against its potential prejudicial impact. *See generally* 5 K. Tegland, Wash. Prac., *Evidence* § 105 (1982). As explained in *United States v. Robinson,* 560 F.2d 507, 514 (2d Cir. 1977), *cert. denied,* 435 U.S. 905 (1978):

> Broad discretion must be accorded to the trial judge in such matters for the reason that he is in a superior position to evaluate the impact of the evidence, since he sees the witnesses, defendant, jurors, and counsel, and their mannerisms and reactions. He is therefore able, on the basis of personal observation, to evaluate the impressions made by witnesses, whereas we must deal with the cold record.

(Citations omitted.)

Here the trial court did not abuse its discretion by requiring Coe to repeat statements made by the rapist. The trial judge was in the best position to observe the impact of evidence on the jury. Because of the distinctive nature of the rapist's voice and because the identification of defendant by many of the rape victims was based in large part on his voice, the sound of Coe repeating the words spoken by the rapist was highly relevant. Therefore, the evidence should be excluded only if extreme prejudice would result from its inclusion. We agree with the trial court that the prejudicial impact of the sound of defendant's voice repeating the words of the rapist was substantially outweighed by the probative value of the evidence.

## VI

Appellant contends the limited discovery afforded the defense violated CrR 4.7 and the due process clauses of the Fifth and Fourteenth Amendments. Prior to trial, defense counsel requested photographs of persons appearing in

lineups, the results of lineups, identification of persons viewing the lineups, affidavits in support of search warrant applications, police reports, witness statements, and reports of assaults with the same modus operandi. The State refused these requests, and instead gave the defense summaries of police reports and the names and addresses of witnesses in the cases against Coe. The prosecution refused to turn over copies of police reports and continually insisted that no witness statements had been recorded.

CrR 4.7(a)(1)(i) requires the prosecuting attorney to disclose to the defendant, no later than the omnibus hearing, "the names and addresses of persons whom the prosecuting attorney intends to call as witnesses at the hearing or trial, together with any written or recorded statements and the substance of any oral statements of such witnesses". Furthermore, CrR 4.7(a)(3) requires the prosecuting attorney disclose "any material or information within his knowledge which tends to negate defendant's guilt as to the offense charged." CrR 4.7 is designed to protect both parties from surprise. *State v. Vavra,* 33 Wn. App. 142, 143, 652 P.2d 959 (1982). *See State v. Cooper,* 26 Wn.2d 405, 417, 174 P.2d 545 (1946). In *Williams v. Florida,* 399 U.S. 78, 26 L. Ed. 2d 446, 90 S. Ct. 1893 (1970), the Supreme Court expressed the philosophy behind discovery rules such as CrR 4.7:

> The adversary system of trial is hardly an end in itself; it is not yet a poker game in which players enjoy an absolute right always to conceal their cards until played.

399 U.S. at 82, *quoted in State v. Nelson,* 14 Wn. App. 658, 663, 545 P.2d 36 (1975); *State v. Oughton,* 26 Wn. App. 74, 612 P.2d 812, *review denied,* 94 Wn.2d 1005 (1980).

The State violated the discovery rules in several respects. While the prosecuting attorney did inform defense counsel that one witness had been hypnotized in order to enhance her memory of the rape incident, he failed to disclose that three other witnesses had also been hypnotized. Defense counsel became aware of the hypnosis of these three witnesses during cross examination of one of the witnesses

when she inadvertently mentioned that she had been hypnotized. Following this cross examination, defense counsel inquired whether any other witnesses had been hypnotized. The prosecuting attorney then revealed that two other witnesses had also been hypnotized.

■ The prosecutor's failure to inform appellant that the witnesses had made statements while under hypnosis violated CrR 4.7(a)(1)(i), (iv). The prosecutor's belated claim that he failed to disclose this information because he did not know of the hypnotic sessions is unacceptable. *See State v. Vaster*, 99 Wn.2d 44, 659 P.2d 528 (1983); *Seattle v. Fettig*, 10 Wn. App. 773, 519 P.2d 1002 (1974). Coe was entitled to be informed by the State that the witnesses had been hypnotized and to receive the tapes of those hypnotic sessions no later than the omnibus hearing. CrR 4.7(a)(1). *Cf. United States v. Miller*, 411 F.2d 825 (2d Cir. 1969).

■ Further, the prosecutor's failure to disclose certain exculpatory evidence was also improper. Exculpatory evidence relating to counts 2 and 3, contained in police reports, should have been disclosed. Police reports, relating to count 2, contained information concerning descriptions of a suspect by an eyewitness and a different individual. These descriptions did not fit Coe. Another report relating to count 3 contained information regarding a possible suspect. Although the name and address of one of the witnesses in count 2 was given to defense counsel, this is not sufficient under CrR 4.7. The State cannot meet its obligations under CrR 4.7(a)(3) to provide *any* exculpatory information by dribbling out a name and address with nothing more. Persons who are on trial for the commission of a crime are entitled to all information contemplated under CrR 4.7.

■ Finally, Coe asserts that pursuant to CrR 4.7, the prosecution should have made available police reports. The Spokane County Prosecuting Attorney stated that while this had been done routinely in the past, it was not done in this case. The trial court ruled those portions of the police reports which were a "work product" were not subject to

discovery but that an actual statement by a witness to an officer was discoverable. We hold this procedure to be within CrR 4.7. Defendant has no right per se to obtain copies of police reports. *See State v. Music,* 79 Wn.2d 699, 713, 489 P.2d 159 (1971), *vacated,* 408 U.S. 940 (1972). Except for the failure of the prosecuting attorney to provide in a timely manner information as to the hypnotized witnesses and the exculpatory evidence in counts 2 and 3, we find the discovery procedure to have been proper.

## VII

█ Appellant challenges the admission of testimony of witnesses who had been previously hypnotized. In *State v. Martin,* 101 Wn.2d 713, 684 P.2d 651 (1984), we squarely addressed the question of admissibility of such testimony. In *Martin,* we adopted the *Frye* standard as a means of determining the admissibility of hypnotically aided testimony. *Frye v. United States,* 293 F. 1013 (D.C. Cir. 1923). Applying the *Frye* standard, we examined whether the use of hypnosis in this context is generally accepted in the relevant scientific community. We concluded that it is not. As one expert in the field has explained:

> The hypnotic suggestion to relive a past event, particularly when accompanied by questions about specific details, puts pressure on the subject to provide information for which few, if any, actual memories are available. This situation may jog the subject's memory and produce some increased recall, but it will also cause him to fill in details that are plausible but consist of memories or fantasies from other times. It is extremely difficult to know which aspects of hypnotically aided recall are historically accurate and which aspects have been confabulated.

Orne, *The Use and Misuse of Hypnosis in Court,* 27 Int'l J. of Clinical & Experimental Hypnosis 311, 317–18 (1979). *See also* Beaver, *Memory Restored or Confabulated by Hypnosis—Is it Competent?,* 6 U. Puget Sound L. Rev. 155 (1983); Diamond, *Inherent Problems in the Use of Pretrial Hypnosis on a Prospective Witness,* 68 Calif. L. Rev. 313 (1980).

The unreliability of hypnosis as a means of restoring memory makes the use of hypnotically aided testimony unacceptable in the context of a criminal trial. Consequently, in *Martin* we held that "a person, once hypnotized, should be barred from testifying concerning information recalled while under hypnosis." *Martin,* at 722. As an exception to this general prohibition, however, we further held that witnesses may testify as to facts recalled prior to hypnosis if certain procedural safeguards are met. These procedural safeguards work to insure that the testimony of a previously hypnotized witness consists only of prehypnotic memories and is untainted by the hypnotic process. For example, *Martin* states that "[a] detailed record of the witness' prehypnotic memory should be preserved, as the party offering the testimony will have the burden of establishing what the witness remembered prior to the hypnosis." *Martin,* at 722. Recordation of the witness' prehypnotic memory permits subsequent independent verification as to the source of that memory. *See State v. Martin, supra* (Stafford, J., concurring).

Upon remand, the admissibility of the testimony of the previously hypnotized witnesses should be determined in accordance with our holding in *State v. Martin, supra.* Thus, testimony as to facts recalled during hypnosis would be inadmissible. Obviously, the authorities responsible for hypnotizing these witnesses were unaware of *Martin's* procedural safeguards applicable to prehypnotic memory; therefore precise compliance with these requirements was impossible. On remand, in evaluating the admissibility of prehypnotic memories, the trial judge should determine whether there has been substantial compliance with these safeguards. The testimony of the previously hypnotized witnesses would be admissible if the State can show that the testimony consists solely of prehypnotic memory, thus assuring that the purposes of *Martin's* procedural safeguards are satisfied.

## VIII

Appellant challenges the trial court's instruction on the burden of proof, claiming it violated his due process rights. The challenged instruction defined "reasonable doubt" as follows:

The expression "reasonable doubt" means in law just what the words imply—a doubt founded on some good reason. It must arise from the evidence or lack of evidence. It must not be a mere whim or a vague conjectural doubt or misgiving founded upon mere possibilities. It must be a substantial doubt, such as an honest, sensible and fairminded man might with reason entertain consistently with a conscientious desire to ascertain the truth.

Instruction 21. Defendant objects to the requirement of the instruction that a reasonable doubt be a "substantial" one.

In every criminal case, there are indispensable functions that must be performed by the court's instructions to the jury:

(1) To declare that each element of the crime must be proven beyond a reasonable doubt, and define the standard of reasonable doubt; and (2) To state that the burden is upon the "State to prove each element of the crime by that standard".

*State v. Cox,* 94 Wn.2d 170, 174, 615 P.2d 465 (1980) (quoting *State v. McHenry,* 88 Wn.2d 211, 214, 558 P.2d 188 (1977)). The function of informing the jury of the reasonable doubt standard can only be achieved by a specific instruction. *State v. Cox, supra.* Washington courts have approved various forms of instructions, so long as a reviewing court can determine from the totality of the circumstances whether the jury was adequately informed of the allocation of the burden of proof. *See, e.g., State v. Cox, supra; State v. Tanzymore,* 54 Wn.2d 290, 291, 340 P.2d 178 (1959); *State v. Walker,* 19 Wn. App. 881, 884, 578 P.2d 83, *review denied,* 90 Wn.2d 1023 (1978). The specific language of the instructions is left to the discretion of the trial court. *Kjellman v. Richards,* 82 Wn.2d 766, 768, 514 P.2d 134 (1973); *State v. Biggs,* 16 Wn. App. 221, 225, 556 P.2d 247 (1976), *review denied,* 88 Wn.2d 1007 (1977).

In *State v. Flores,* 18 Wn. App. 255, 568 P.2d 1281 (1977), *review denied,* 89 Wn.2d 1014 (1978), the Court of Appeals disapproved a reasonable doubt instruction almost identical to the instruction in the present case. According to the *Flores* court, "[u]sing 'substantial' invites confusion and further definition because without an explanation of the phrase, the tendency to mislead the jury is apparent." 18 Wn. App. at 257–58. The *Flores* court stated:

> "Reasonable" and "substantial" are not synonymous, as can be seen by referring to any of the standard dictionaries. The point was well put by counsel in argument recently where he pointed out that if one had to undergo a serious operation and were querying the doctor as to the prospects for a successful outcome, how differently the person would feel if the doctor told him there was only a reasonable chance of success as opposed to being told there was a substantial chance of success.

*State v. Flores, supra* at 257 (quoting *State v. Davis,* 482 S.W.2d 486, 490 (Mo. 1972) (Seiler, J., concurring)).

 ██ We agree with the *Flores* court that the use of the term "substantial" carries the potential for confusing the jury and should not be used as it invites error in every case. An instruction which does not define reasonable doubt in terms of "a substantial doubt" should be given. Nevertheless, in considering whether the use of the word "substantial" in this case constitutes error, we must consider the instruction in its entirety and the other instructions given in this case. *State v. Walker, supra.* The phrase, when read in the context of all of the instructions, would not improperly instruct the jury that the burden of proof was on the defendant or that the burden was less than proof beyond a reasonable doubt. To avoid any repetition of this issue, however, the instruction should not be given in future cases.

Finally, defendant, acting pro se, has claimed a number of errors. We have examined each and find them to be without merit.

We reverse the convictions of Frederick H. "Kevin" Coe.

The accumulated evidentiary errors committed by the trial court necessitate a new trial, as do the violations of our discovery rules by the prosecuting attorney. While it is possible that some of these errors, standing alone, might not be of sufficient gravity to constitute grounds for a new trial, the combined effect of the accumulation of errors most certainly requires a new trial. *State v. Badda*, 63 Wn.2d 176, 183, 385 P.2d 859 (1963); *State v. Oughton*, 26 Wn. App. 74, 85, 612 P.2d 812, *review denied*, 94 Wn.2d 1005 (1980). The case is remanded to Spokane County Superior Court for proceedings consistent with this opinion.
Reversed.

WILLIAMS, C.J., and ROSELLINI, BRACHTENBACH, DORE, and PEARSON, JJ., concur.

DOLLIVER, J. (concurring in part, dissenting in part)—I concur in the result of the majority and in all particulars of the majority opinion except that which is contained in part VII, to which I dissent. My views on the admissibility of hypnotically induced testimony are contained in *State v. Martin*, 101 Wn.2d 713, 684 P.2d 651 (1984) and need not be repeated here. In any retrial of this case, I would require the procedures which I outlined in *Martin* to be followed.

UTTER and DIMMICK, JJ., concur with DOLLIVER, J.

Reconsideration denied September 24, 1984.