2014 APR 21 AM 9: 22


# IN THE COURT OF APPEALS FOR THE STATE OF WASHINGTON

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | |
| | ) | No. 69742-1-I |
| Respondent, | ) | |
| | ) | DIVISION ONE |
| v. | ) | |
| | ) | |
| BERNARD D. WATKINS, | ) | UNPUBLISHED OPINION |
| | ) | |
| Appellant. | ) | FILED: April 21, 2014 |

SPEARMAN, C.J. — Bernard Watkins appeals his convictions for three counts of promoting commercial sexual abuse of a minor and second degree unlawful possession of a firearm, arguing that the trial court erred in denying his motion for a mistrial and that cumulative error requires reversal. We reject his arguments and affirm.

## FACTS

While investigating prostitution and gun crimes, Kent Police Detective Brian Lewis interviewed Kayla McCoy and researched advertisements on backpage.com for three juveniles: A.G.; M.S.; and T.R. Based on his investigation, Detective Lewis obtained a warrant listing various items, including phones with two specific numbers, and authorizing a search of Altesa Turner's apartment. In a search of the apartment, officers found various items related to the backpage.com advertisements, documents listing the name of Bernard

Watkins, a loaded shotgun, and an iPhone connected to one of the phone numbers specified in the search warrant.

When interviewed by police, Watkins admitted dating Turner and staying at her apartment approximately every other night. Watkins said that he left certain items at Turner's apartment, including his gray "sidekick style" phone, for which he gave the number specified in the search warrant and associated with the iPhone. Verbatim Report of Proceedings (VRP) (11/8/12) at 107. Watkins also admitted handling the shotgun but told police that the gun belonged to Turner's boyfriend.

Following the investigation, the State charged Watkins and Turner with promoting commercial sexual abuse of a minor. After Turner pleaded guilty and agreed to testify against Watkins, the State amended the information to charge Watkins with three counts of promoting commercial sexual abuse of a minor, one count of second degree unlawful possession of a firearm, and one count of second degree possession of depictions of a minor engaged in sexually explicit conduct.

According to the State's theory of the case, Watkins used the iPhone to advertise and arrange acts of prostitution for A.G., M.S., and T.R. During trial, outside the presence of the jury, the parties discussed on the record the State's plan to introduce into evidence certain photos found on the iPhone to prove the charges. The defense objected, arguing that the State lacked a foundation to connect the iPhone to Watkins. The trial court asked the prosecutor, "What is the connection of the iPhone to Mr. Watkins?" VRP (11/14/12) at 33. The

2

prosecutor referred to Watkins's admission to police of his phone number, described text messages on the iPhone referring to his nicknames and his relatives, listed the names and email address associated with Watkins on the iPhone, and described photos of Watkins and the ads featuring the named victims found on the iPhone. Finally, the prosecutor described videos, showing Watkins engaging in sexual activity, found on the iPhone:

> [Prosecutor]: There are videos. There are I believe nine videos on the phone, and my numbers may be wrong, but four of which are the defendant, somebody holding the phone, obviously like this, and the defendant receiving oral sex from Altesa Turner and this other woman that I believe her name is Ashley, and Altesa Turner will testify, "You know what? That's me. The defendant used his iPhone when I was performing oral sex on him."
> THE COURT: You're not planning on showing that to the jury, are you?
> [Prosecutor]: If the defense is going to go the route that "this isn't my phone," I mean it is – I certainly anticipate asking about it, because while extraordinarily -- I mean while it is what it is, I mean there are multiple videos of literally the person --
> THE COURT: I think maybe a description would be fine, but that is overwhelmingly a danger of unfair prejudice.
> [Prosecutor]: And I would agree with that, Your Honor. I have no desire to actually show the videos, but what you have is you have -- I believe there are nine videos on there. Five of them are of that, and none of the other ones are associated with any other people, so everything on that phone is associated with the defendant.

VRP (11/14/12) at 35-36.

Following additional discussion, the trial court stated, "I will also allow the photographs that you have talked about to be admitted on the condition that you tie the phone to Mr. Watkins in the way that you have said that you are going to do it." VRP (11/14/12) at 37. Watkins did not object.

The following day, the State called Turner as a witness. Turner testified about her relationship with Watkins, her knowledge of and participation with

3

Watkins in the use of backpage.com ads to arrange for the prostitution of minors, and Watkins' use of the iPhone. Near the end of the State's lengthy direct examination, without objection from Watkins, the prosecutor asked Turner about videos found on the iPhone:

Q. Now and do you recall how many different videos you looked at?

A. I looked at three?

Q. Okay. And what are the videos of?

A. Two videos are of me and the defendant.

Q. And what are you and the defendant doing?

A. Having sex.

Q. And is that a particular type of sex that you were –

A. Oral sex.

Q. And who is performing oral sex?

A. I am.

Q. Performing on the defendant?

A. The defendant.

Q: And who took the video?

A: The defendant

Q. And what did he take the video with?

A. The iPhone.

Q. His iPhone?

Q. Okay, and is that true for both of the videos?

A. Yes.

Q. Of you?

A. Yes.

Q. And you said that there was another video, as well; what is the other video?

A. I saw the defendant getting oral sex – receiving oral sex from another person.

Q. And how are you able to tell that it is the defendant?

A. Because of the black hooded sweatshirt he had on.

VRP (11/15/12) at 148-50.

After questioning Turner on a few more subjects, the prosecutor completed the direct examination and the trial court excused the jury until the following Monday. After the jury left the courtroom, the trial court began:

> THE COURT: Okay, I was really surprised with that testimony on Exhibit 5. I thought I said I didn't want any mention of the oral sex from the iPhone, because I found no nexus to the prostitution and it was highly inflammatory? And maybe you misunderstood me that you just didn't want – I didn't want you playing it in court. Certainly that is true, but I didn't even want any mention of it.
> [Prosecutor]: It was my understanding that I was not to play it in court. ... [I]t was my understanding that the Court said – I had mentioned it and the Court said, "Well, you are not going to show that, are you?" And I said, "No, absolutely not. I have no intention of showing it."
> THE COURT: And then a little bit later I ruled on it, I thought, and I said – maybe I didn't, but that was my intention.
>
> I see no relationship – I do believe I said it would be -- any probative value would be outweighed by the danger of unfair prejudice.
>
> So anyway, what is done is done. We have got three days to think about it. [Defense Counsel], I want you to think about a

5

possible corrective instruction, or maybe we just let it alone, but it was not my intent that any testimony on that come in.

VRP (11/15/12) 153-54.

When the trial resumed following the weekend, Watkins moved for a mistrial based on the references to the videos of oral sex. The trial court denied the motion. Over the State's objection, the trial court then instructed the jury to disregard and not consider in any way the "testimony that the iPhone contained video of Mr. Watkins engaged in sex acts." VRP (11/19/12) at 21.

The jury convicted Watkins of three counts of promoting commercial sexual abuse of a minor and unlawful possession of a firearm, but could not reach a verdict on the possession of depictions of a minor engaged in sexually explicit conduct. The court imposed a standard range sentence.

Watkins appeals.

DISCUSSION

Watkins argues that the trial court erred by denying his motion for a mistrial because Turner's testimony about the videos denied him a fair trial. We review a denial of a motion for a mistrial for abuse of discretion, that is, if "no reasonable judge would have reached the same conclusion." State v. Hopson, 113 Wn.2d 273, 284, 778 P.2d 1014 (1989) (citations omitted). A "trial court should grant a mistrial only when the defendant has been so prejudiced that nothing short of a new trial can insure that the defendant will be tried fairly." State v. Johnson, 124 Wn.2d 57, 76, 873 P.2d 514 (1994). Thus, we must determine whether Turner's testimony was so prejudicial that Watkins was denied his right to a fair trial. In making this determination, we consider (1) the

seriousness of the claimed trial irregularity; (2) whether it was cumulative of other properly admitted evidence, and (3) whether it could be cured by an instruction to disregard. State v. Escalona, 49 Wn. App. 251, 255, 742 P.2d 190 (1987).

Watkins claims the admission of Turner's testimony about the videos was a serious irregularity because it "tended to show deviance and a lack of morality" in his private sex life, which the jury could have used to conclude he had a general propensity to promote prostitution of minors, denying him his right to the presumption of innocence. Appellant's brief (App. Br.) at 11. But the record does not reveal any irregularity. Nothing in the record indicates that Watkins requested exclusion of testimony about the videos under ER 404(b) or any other evidence rule prior to Turner's testimony. Despite the trial court's apparent belief to the contrary, our review of the record does not reveal any order excluding testimony describing the content of the videos. Watkins did not object to the prosecutor's questions or to Turner's testimony describing the videos.

And Watkins's description of the testimony is extreme. Although Turner testified that Watkins took video of his sexual activities with two different women, nothing in her testimony suggested that his behavior was criminal or indicated that the women involved were anything other than consenting adults. The evidence was cumulative in that Turner testified that she and Watkins had an intimate dating relationship.

Moreover, Watkins fails to demonstrate that Turner's description of the videos prejudiced him. The portion of the direct examination focusing on Turner's description of the videos was very brief. The trial court instructed the

7

jury to disregard it and it was not mentioned again. We presume the jury followed the trial court's instruction. Escalona, 49 Wn. App. at 254. The trial court did not abuse its discretion in denying the motion for a mistrial.

Watkins next claims that cumulative error requires a new trial. While some errors, "standing alone, might not be of sufficient gravity to constitute grounds for a new trial, the combined effect of the accumulation of errors" may require a new trial. State v. Coe, 101 Wn.2d 772, 789, 684 P.2d 668 (1984). In addition to Turner's testimony about the videos, Watkins alleges four additional errors.

First, as discussed above, Watkins fails to demonstrate any error regarding Turner's testimony about the video. Second, Watkins contends the trial court erred by overruling his objection and allowing McCoy to testify that she had seen him fire the shotgun on the Fourth of July. To demonstrate error, Watkins relies on the trial court's statement the next day indicating regret over that ruling and stating, "If I could do that over again or if I had been thinking about it beforehand, I probably wouldn't have allowed that in." VRP (11/21/12) at 3. But McCoy's testimony was directly relevant to establish that Watkins possessed the gun and that it was operable. And Watkins fails to articulate any unfair prejudice to outweigh its probative value. The trial court's initial decision to overrule the objection and allow McCoy's testimony was not error.

Next, without citation to the record or authority, and without sufficient explanation, Watkins claims that the jury violated the court's instruction to refrain from discussing the case before deliberations. The State has provided

8

references to the record indicating that a juror asked the bailiff in the jury room about the pace of the trial and whether defense counsel could move faster. When the bailiff reported these comments, the trial court instructed the jury again not to discuss anything about the case, even the judge's tie. Watkins fails to describe or establish any error or resulting prejudice.

Finally, again without citation to the record, Watkins complains that the testimony of the victims' mothers was "highly prejudicial" and "emotionally charged." App. Br. at 16. He also complains that McCoy was "noticeably pregnant" and displayed discomfort while on the witness stand by constantly rubbing her stomach and appearing to be in pain. App. Br. at 17. But he does not identify any error. In sum, Watkins claim of cumulative error fails.

In his Statement of Additional Grounds for Review (SAGR), Watkins first contends that the State withheld evidence by failing to facilitate a defense interview of McCoy. But a review of the record reveals that the trial court ordered a recess to allow the defense to conduct a recorded interview with McCoy before she testified at trial. Watkins fails to identify grounds for relief.

Watkins also contends he was denied various constitutional rights, including his right to confront witnesses, when the State introduced text messages because "you cannot tell who is talking to who." SAGR at 4. Because the essence of his argument appears to go to the weight, rather than admissibility, of the evidence, we do not review this claim. The persuasiveness, credibility, and weight of the evidence are matters for the trier of fact and are not subject to appellate review. State v. Camarillo, 115 Wn.2d 60, 71, 794 P.2d 850 (1990).

Finally, Watkins contends that the prosecutor made "misleading" comments and expressed his personal opinion during closing argument while "knowing that the evidence proved different." SAGR at 16. But "a prosecutor has wide latitude in closing argument to draw reasonable inferences from the evidence and may freely comment on witness credibility based on the evidence." State v. Lewis, 156 Wn. App. 230, 240, 233 P.3d 891 (2010). Watkins fails to identify improper argument.

Affirmed.

Spearman, C.J.

WE CONCUR: