# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

TRACY HELM and CHRISTOPHER )  No. 71664-6-I
HELM, husband and wife, MICHAEL )
BRADY HELM, a minor, and HAILEY )
NICOLE HELM, a minor, )  DIVISION ONE
)
Appellants, )  UNPUBLISHED OPINION
)
v. )
)
STATE OF WASHINGTON, )
DEPARTMENT OF TRANSPORTATION )
(WSDOT), a division of Washington State )
government, and PAULA J. HAMMOND, )
SECRETARY OF TRANSPORTATION, )
)
Respondents. )  FILED: October 20, 2014
)

APPELWICK, J. — The jury found the State of Washington not liable for damages Helm suffered after she collided with a fallen rock on I-90. Helm appeals, arguing that the trial court erred in allowing the State to present its discretionary immunity defense. She asserts that the trial court improperly limited her expert testimony. She contends that the trial court erred in excluding multiple pieces of evidence as unduly prejudicial. We affirm.

## FACTS

On the morning of November 6, 2006, Tracy Helm drove her motorhome westbound on Interstate 90 (I-90) towards Snoqualmie Pass. She and her children were returning home to Olympia from a trip to Spokane. As Helm drove along Lake Kecheelus, she came around a blind corner. Up ahead was a snowshed above the highway. Helm saw something moving in the road ahead. There was a car in the lane to her left and a

rock wall to her right. Unable to swerve, Helm laid on her brakes. She could not avoid the object in the road. She later discovered it was a large fallen rock.

Thomas Norris, a Department of Transportation (Department) worker, was patrolling the highway in his snow plow that morning. He responded to Helm's accident at westbound milepost 58.2, just east of the snowshed. Helm told Norris that she hit a rock. Norris saw several "football- to basketball-size" rocks on the shoulder, which he threw over the concrete barrier to the right. He then drove Helm and her children to Snoqualmie Summit to wait for a tow truck and transport home.

Helm sued the Department. On December 17, 2009, she filed an amended complaint alleging negligence.[1] She asserted that the Department failed to properly maintain I-90 near milepost 58 and failed to warn motorists about rockfall. She alleged that "[p]roblems and safety concerns regarding this short stretch of I-90 had been exhaustively identified over 10 years earlier and yet, the necessary upgrades and repairs had not been made." The Department denied that it was negligent. It asserted discretionary immunity based on its decision to defer remediation of the slope where Helm's accident occurred.

The Department uses an unstable slope management system (USMS) to assess, prioritize, and repair slopes along state highways. Under the USMS, the Department considers eleven criteria and assigns each criterion a point value ranging from 3 to 81. If a slope rates 350 points or higher, the Department considers it for repair. In determining when and whether to repair a slope, the Department considers several factors, such as funding, environmental issues, and contracting.

---

[1] The record on appeal does not contain Helm's original complaint.

The slope along the stretch of I-90 where Helm's accident occurred is known as "Slope 1867." Slope 1867 spans from miles 58.38 to 58.15 on the westbound side of I-90. In 2005, the Department evaluated Slope 1867 as part of the USMS and rated the slope at 351 points. The Department deferred remediation of Slope 1867 to address higher priority slopes. It assigned Slope 1867 to an upcoming construction project that would widen and reroute the highway from mileposts 55 to 61 and blast away the rock wall in many places.

Based on its decision to defer slope remediation, the Department moved for summary judgment to dismiss Helm's negligence claims. The trial court found that the USMS as a system qualified for discretionary immunity. However, it also found that application of the USMS to defer remediation of this particular slope was fact-dependent. The court could not determine whether a cost-benefit analysis supported the Department's decision to defer remediation of Slope 1867. It therefore denied summary judgment, leaving that question for the jury.

At trial, Helm argued that the Department was negligent based on four different grounds: it failed to maintain the ditch adjacent to Slope 1867 in a reasonably safe manner; it had notice of and a reasonable opportunity to remove the fallen rock; it failed to warn Helm that a rock could be present in the roadway adjacent to Slope 1867; and it failed to maintain Slope 1867 in a reasonably safe manner.

Helm called Tom Badger, the Department's chief engineering geologist, to testify. He described the USMS and how the Department determines the method and order of slope repair. He explained that the Department might fully mitigate a slope or might implement protective measures that help prevent rocks from reaching the road. These

3

protective measures include rockfall fences, rockfall ditches, concrete barriers, cable nets, and wire mesh draped over the slope.

Helm also sought to call Henry Borden, a civil engineer who previously worked for the Department, to testify on the adequacy of the Department's protective measures. The Department moved to limit Borden's testimony, arguing that Borden was not qualified to opine on matters involving geology. The court ruled that Borden could testify on issues that pertained to the highway and did not require analysis of the slope. Borden testified that he believed the Department did not provide an adequate barrier between the slope and the highway.

The jury found that the Department balanced the risks and advantages of delaying remediation of Slope 1867 and was not otherwise negligent. Accordingly, the jury decided that the Department had no liability for Helm's injury and damages. Helm appeals.

## DISCUSSION

Helm argues that the trial court erred in presenting the Department's discretionary immunity defense to the jury, because the defense was inapplicable and misled the jurors. She also alleges that the court improperly prevented her expert witness from testifying about the effectiveness of the Department's protective measures at Slope 1867. She further contends that the trial court erred in excluding evidence involving the Department's slope maintenance as unduly prejudicial. Finally, she asserts that several additional errors amounted to cumulative error requiring reversal.

I.   Discretionary Immunity Defense

Helm argues that the trial court erred in allowing the Department to present its discretionary immunity defense to the jury. First, she asserts that she did not challenge

4

the Department's decision to defer slope remediation and therefore the Department was not entitled to an instruction on the defense. Second, she argues that the instructions given were misleading.

A. Discretionary Immunity Defense Was at Issue

Generally, we review the trial court's choice of jury instructions for abuse of discretion. State v. Douglas, 128 Wn. App. 555, 561, 116 P.3d 1012 (2005). "Each party is entitled, when the evidence warrants it, to have his theory of the case submitted to the jury under appropriate and properly requested instructions." Logue v. Swanson's Food, Inc., 8 Wn. App. 460, 463, 507 P.2d 1204 (1973).

In her amended complaint, Helm alleged that the Department failed to make the necessary upgrades and repairs to keep the highway safe at Slope 1867. At no time did she further amend her complaint to retract this assertion. When the Department moved for summary judgment based on its discretionary immunity defense, Helm opposed the motion as to all of her claims. The trial court denied the Department's motion. Accordingly, her theory that the Department negligently failed to remediate the slope was still alive at the time of trial.

Helm's arguments at trial were also broad enough to fairly trigger the discretionary immunity defense. In opening statements, Helm's attorney told the jury that the "ultimate issue in this case" is whether the Department is "accountable for the accident and . . . for the harm that that crash caused [Helm]." Counsel referred to Slope 1867 as "high-risk" and discussed interim measures that protect against rockfall in high risk slope areas. He concluded by saying that the Department "didn't meet the appropriate standard of care in

5

putting up <u>at least</u> a temporary fix until they could get around to doing a slope remediation." (Emphasis added.)

Helm also presented evidence of the Department's alleged negligence, as to both slope remediation and off-slope measures. For example, Helm testified that there were no protective measures on the slope where her accident occurred and that she observed no warning signs about rocks. She also elicited testimony from Badger that Slope 1867 did not meet current design standards. And, she introduced an e-mail Badger wrote prior to the accident, which recommended that the rockfall ditch below the slope be cleared out. Helm's expert witness also opined that the Department's protective measures at Slope 1867 were insufficient.

The Department offered evidence to suggest that it was not negligent in maintaining the slope. Its employee, Norris, testified that a concrete barrier ran along a portion of Slope 1867 and explained the process by which the Department keeps rockfall ditches clean. Badger spoke about protective measures taken by the Department. Another Department employee testified that the Department uses highway advisory radio warnings and variable signs along the road to caution drivers about hazards.

The parties also elicited testimony relevant to the Department's discretionary immunity. Badger explained the USMS and how the Department prioritizes hazards. He spoke about the Department's budgetary restraints. And, he testified that the Department prioritized higher-risk slopes and assigned Slope 1867 to the upcoming I-90 construction project.

In closing, Helm's counsel reiterated that the Department should have "taken corrective actions to prevent rocks -- that rock in that particular day, but any rocks from

reaching the roadway to make [Slope 1867] and the highway below it, which is where we're concerned, safe for motorists to use at that time." He did not specify that Helm's allegations of negligence pertained only to the Department's failure to take adequate protective measures. Nor did he concede to the jury that discretionary immunity applied to the Department's decision about slope remediation.

The Department did not assert that it was entitled to immunity for all activities involving slopes. It did not raise discretionary immunity in its opening. Instead, it asked the jury to find that it had insufficient notice of the rockfall, adequately maintained the slope, and was not negligent. Similarly, in closing, the Department asked the jury to find two things:

> First, the [Department] balanced the risks and advantages of delaying remediation of the slope, and secondly, the [Department] is not negligent because we had mere minutes of notice before the rock being present in the roadway and Mrs. Helm colliding with it, because the ditch was maintained properly, and lastly because the [Department] managed the hillside.

Despite the evidence and arguments presented, Helm argues that the Department's discretionary immunity defense is inapplicable in this case. But, Helm made several broad allegations that the Department negligently failed to prevent her accident and keep the roadway safe. She did not differentiate between the Department's use of interim protective measures and its decision to defer slope remediation. Nor did she provide or point to guidelines distinguishing between interim and permanent measures.[2] The Department responded to Helm's broad brush approach by disputing

---

[2] Moreover, it is unclear whether the Department would in fact be liable for decisions it made regarding protective measures at Slope 1867. However, because the parties do not address the extent of the Department's immunity, we do not consider this question further.

7

her allegations of negligence and asserting discretionary immunity with respect to its decision to defer slope remediation.

The parties' theories of the case necessitated the Department's defense. The trial court did not abuse its discretion in submitting the issue of discretionary immunity to the jury.

B. Jury Instructions Were Not Misleading

We review the adequacy of jury instructions de novo. State v. Brown, 159 Wn. App. 1, 14, 248 P.3d 518 (2010). Jury instructions are sufficient if they (1) allow both parties to argue their theory of the case; (2) are not misleading; and (3) when read as a whole, properly inform the trier of fact of the applicable law. Anfinson v. FedEx Ground Package Sys., Inc., 174 Wn.2d 851, 860, 281 P.3d 289 (2012). An erroneous instruction is grounds for reversal only if it prejudices a party. Id. If the instruction contains a misstatement of law, prejudice is presumed. Id. If the instruction is merely misleading, prejudice must be demonstrated. Id.

Helm does not allege that the instructions misstated the law. She asserts that the instructions misled the jury to believe the Department was immune from liability for all activities involving slopes. In particular, Helm challenges instructions 13 and 27 and the jury verdict form.

Instruction 13 stated that "the [Department] claims and [Helm] denies the following affirmative defense: . . . The Department of Transportation exercised policy level judgment in managing the slopes which included slope 1867." This instruction did not specify which of the Department's slope management decisions fell within discretionary immunity.

8

However, Instruction 27 explained the defense in more detail and indicated that discretionary immunity applied to the Department's decision to defer remediation of Slope 1867:

The system for managing slopes along roadways involves a basic governmental policy of the [Department].

The prioritization was essential to determining how to mitigate dangers with limited resources.

The prioritization involved the exercise of policy-level judgment.

The [Department] has the authority to make this type of decision.

The [Department] is immune from liability for decisions in which it is determining basic governmental policy.

(Emphasis added.)

Moreover, the verdict form supplemented the instructions with a step-by-step process by which the jury would arrive at its verdict. The form asked, "Does the evidence establish that the [Department] balanced the risks and advantages of delaying remediation of slope 1867?" If the jury answered "yes," the form asked, "Apart from its decisions regarding slope remediation, was the [Department] negligent in this case?" If the answer was again "yes," the verdict form directed the jury to determine the amount of damages awardable to Helm. This clarified that the Department may be immune with respect to its decision about deferring slope remediation but may still be liable for damages if it was otherwise negligent. The jury instructions were not misleading.

Furthermore, the instructions allowed Helm to present her theory of the case. Instruction 13 enumerated the four grounds upon which Helm alleged negligence. Instruction 24 said, "The [Department] has a duty to exercise ordinary care in the maintenance of its public highways to keep them in a reasonably safe condition for

9

ordinary travel." Instruction 25 stated, "In order to find the [Department] liable for an unsafe condition of a road that was not created by its employees, you must find that the [Department] had notice of the condition and that it had a reasonable opportunity to correct the condition." In closing, Helm's attorney pointed the jury to instruction 25, which he said was "the rule in this case." The jury instructions allowed Helm to argue that the Department negligently failed to keep the highway safe.

The trial court properly presented the issue of discretionary immunity to the jury.

II.    Expert Testimony

Helm asserts that the trial court erred in ruling that her expert, Borden, was not qualified to testify about interim solutions pending the slope's remediation. She argues that Borden, a highway engineer, was "qualified based upon his knowledge, expertise, experience, and training to testify about interim safety devices to prevent rockfall from reaching I-90."

Expert testimony is admissible when (1) the witness qualifies as an expert, (2) the opinion is based upon an explanatory theory generally recognized in the scientific community, and (3) if it will be helpful to the trier of fact. ER 702; In re Pers. Restraint of Morris, 176 Wn.2d 157, 168-69, 288 P.3d 1140 (2012). Practical experience in a given area can qualify a witness as an expert. See State v. J-R Distribs., Inc., 82 Wn.2d 584, 597, 512 P.2d 1049 (1973). However, an otherwise qualified witness may not testify to an issue outside the witness's area of expertise. Queen City Farms, Inc. v. Cent. Nat. Ins. Co. of Omaha, 126 Wn.2d 50, 103-04, 882 P.2d 703, 891 P.2d 718 (1994). Whether a person is qualified to express an expert opinion is within the sound discretion of the trial court. J-R Distribs., 82 Wn.2d at 597.

Contrary to Helm's assertion, the trial court did not prevent Borden from testifying about all interim measures. Instead, it limited Borden's testimony to areas in which he had expertise. Borden is a civil engineer. His duties include traffic impact studies, topographic surveying of streets and highways, and roadway safety analysis. He previously worked for the Department for 25 years. During that time, Borden's primary focus was highway engineering and monitoring. He has frequently worked with protective devices along the shoulder of the road, including concrete barriers and catchment ditches. However, he is not a geologist and possesses no degree in geology.

The court ruled that slope remediation was outside the scope of Borden's expertise. It defined slope remediation as "work that relates to the slope," including protective devices such as rock screens and cable netting. Accordingly, it limited his testimony to issues involving the highway that did not require analysis of the slope. This was not an abuse of discretion.

During Borden's testimony, the court sustained five objections by the Department that Borden's answer would go beyond the scope of his expertise. The excluded evidence pertained to slope maintenance and slope-associated risks—issues the court ruled were outside the scope of Borden's expertise. The trial court did not abuse its discretion in excluding evidence that fell within the purview of its earlier ruling limiting the testimony.

III.   Exclusion of Highway Activity Log

Helm asserts that the trial court improperly excluded a highway activity log that showed a rockslide occurred at milepost 58 fifteen hours before her accident. She argues that the court erred in finding that the log was unduly prejudicial.

Under ER 403, evidence may be excluded if the danger of unfair prejudice substantially outweighs its probative value. The trial court has wide discretion in balancing the probative value of evidence against its potential prejudicial impact. State v. Coe, 101 Wn.2d 772, 782, 684 P.2d 668 (1984). A trial court abuses its discretion only if its decision was manifestly unreasonable, exercised on untenable grounds, or based on untenable reasons. Gorman v. Pierce County, 176 Wn. App. 63, 84, 307 P.3d 795 (2013), review denied, 179 Wn.2d 1010, 316 P.3d 495 (2014). An erroneous evidentiary ruling is grounds for reversal only if it was prejudicial. Brown v. Spokane County Fire Prot. Dist. No. 1, 100 Wn.2d 188, 196, 668 P.2d 571 (1983).

In pretrial motions in limine, Helm sought to admit the log to show that the Department had notice of rockfall the night before her accident. The Department objected, arguing that there was no competent witness to lay foundation for the log and that the log established only that the rockfall occurred at milepost 58, not specifically at Slope 1867. The court stated that "without a witness who can clearly place these prior incidents, it seems to me that the [Department] is then faced with the kind of substantial danger of unfair prejudice, confusion of the issues or misleading of the jury that is spelled out in ER 403." The court excluded the log.

Helm maintains that the log should have been admitted, because prior rockfall so close in time is probative of notice and a duty to protect and warn motorists. But, as the court noted, Helm did not demonstrate that the earlier rockfall came from Slope 1867. The log placed the rockfall at milepost 58. Slope 1867 stretches from only would-be mileposts 58.15 to 58.38. Three other slopes sit between mileposts 58.00 and 59.00. Helm offered no other evidence to show that Slope 1867 was the source of the rock she

hit.[3] As a result, the court recognized the "great prejudice to the [Department] in having the jury consider a rockfall that came from a different slope."

The trial court did not abuse its discretion in excluding the highway activity log.

## IV. Exclusion of Slope Report

Helm asserts that the trial court erred in excluding a 2005 Department report assessing slopes along I-90 in Snoqualmie Pass. She argues that the slope report was relevant to show what protective measures the Department used on other similar slopes and whether those measures were effective.

We review a trial court's evidentiary rulings for abuse of discretion. Cox v. Spangler, 141 Wn.2d 431, 439, 5 P.3d 1265, 22 P.3d 791 (2000). A trial court has "broad discretion in ruling on evidentiary matters and will not be overturned absent manifest abuse of discretion." Sintra, Inc. v. City of Seattle, 131 Wn.2d 640, 662-63, 935 P.2d 555 (1997). Relevant evidence is evidence having any tendency to prove or disprove a fact that is material to the determination of the action. ER 401. "Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." ER 403.

When Helm moved to admit the slope report, the trial court expressed concern that it would invite the jury to consider the risk of rockfall across all of Snoqualmie Pass. It stated that "the issue in question is a particular slope and the risk presented by that particular slope and the notice to the Department of the risk presented by that particular

---

[3] At oral argument, Helm asserted that the rock must have come from Slope 1867, because the slope to the east was remediated and to the west lay the snowshed and a concrete barrier. She did not make this offer of proof at the trial level.

slope, and I don't see information on other parts of the pass as being helpful to the jury in answering that question." It excluded the report under ER 403, finding that the report's relevance was "greatly outweighed by the prejudice of confusing the jury, wasting time, and raising collateral issues."

Helm contests this finding, arguing that the report was useful precisely because it covered other areas along I-90. But, Helm's desired use of the report is the source of the court's concern: by comparing protective measures used on other slopes, the jury could have been confused about whether those measures were necessary or effective at Slope 1867.

The court's concern is well-taken. The report is a 57 page document that evaluates slopes spanning 32 miles along the I-90 corridor in Snoqualmie Pass. The report makes several recommendations about approaches to identified hazards. Some of the recommendations apply to the I-90 corridor generally, and others address specific high-risk areas. Based on Slope 1867's USMS rating, the report includes the slope in one of several high-risk areas. The report individually assesses Slope 1867, along with dozens of other slopes. Thus, the report contains relevant information but also covers a range of other slopes along a long, mountainous stretch of highway.

Whether a piece of evidence's potential for prejudice substantially outweighs its probative value is within the trial court's discretion. Coe, 101 Wn.2d at 782. The court's decision here was not untenable. Moreover, Helm was not deprived of the information relevant to Slope 1867. The court ruled that Badger, who coauthored the report, could testify about Slope 1867 and explain why certain measures were or were not implemented. The trial court did not abuse its discretion in excluding the slope report.

14

Helm further contends that the trial court improperly prevented her from using the report to refresh Badger's memory. A witness may use a writing to refresh his or her memory for the purpose of testifying if the opposing party has an opportunity to review the writing. ER 612; State v. Williams, 137 Wn. App. 736, 750, 154 P.3d 322 (2007). Whether to allow the use of notes to refresh a witness's memory lies within the trial court's discretion. State v. Huelett, 92 Wn.2d 967, 969, 603 P.2d 1258 (1979).

The court previously exercised its discretion to exclude the report as unduly prejudicial. The Department then objected to Helm's use of the report to refresh Badger's memory on relevance grounds. The court sustained the objection to prevent Helm from using the report on an irrelevant line of questioning. Specifically, the court sustained objections to Helm's questions about Badger's grouping of slopes into three geographic clusters. These questions were not immediately germane to the central issue in this case, which was whether the Department was negligent in maintaining Slope 1867. Helm argues without citation that "relevance only applies to the admissibility of a piece of evidence." But, the trial court has wide discretion over the mode of witness interrogation and the presentation of evidence. ER 611(a); see Sanders v. State, 169 Wn.2d 827, 851, 240 P.3d 120 (2010). The court did not bar Helm from further using the report to refresh Badger's memory on relevant questions. It properly exercised its discretion in limiting her use of the report.

V.   Cumulative Error

Helm argues that the exclusion of the slope report combined with four additional rulings amounts to cumulative error warranting reversal. She cites no authority for applying the cumulative error doctrine in a civil case. We find no error in the exclusion of

the slope report. Helm's additional challenges pertain to proximate cause and damage—issues that the jury did not reach, because it found no negligence on behalf of the Department. We find no cumulative error.

The trial court properly presented the issue of discretionary immunity to the jury. The court did not err in limiting Helm's expert testimony or in excluding unduly prejudicial evidence. We affirm.

WE CONCUR: